# Illinois Official Reports

## Appellate Court

*People v. Bates*, 2018 IL App (4th) 160255

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. QUENTIN BATES, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0255 |
| Filed | September 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-CF-953; the Hon. John P. Schmidt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Emily E. Filpi, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>John C. Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices DeArmond and Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1 In November 2011, the State charged defendant with (1) home invasion, (2) aggravated criminal sexual assault (penis to mouth), and (3) aggravated criminal sexual assault (penis to vagina). 720 ILCS 5/12-11(a)(1) (West 2010); *id.* § 11-1.30(a)(1). The State alleged that in September 2011, defendant, while armed with a knife, broke into A.P.'s dwelling and sexually assaulted her.

¶ 2 In October 2013, the State filed notice of intent to use evidence of other sex offenses. 725 ILCS 5/115-7.3(b) (West 2012). In pertinent part, the State alleged that, in October 2011, defendant, while armed with a knife, broke into C.H.'s dwelling and sexually assaulted her. In November 2013, the trial court granted the State's motion.

¶ 3 In January 2016, the State filed a motion *in limine* to exclude evidence of A.P.'s past sexual conduct. 725 ILCS 5/115-7(a) (West 2016). In response, defendant argued that semen found on A.P.'s vaginal swab that came from an unidentified male should not be excluded. The trial court granted the State's motion *in limine*.

¶ 4 In January 2016, a Sangamon County jury convicted defendant on all charges. In March 2016, defendant filed a motion for a new trial. The trial court denied the motion for a new trial and sentenced defendant to 30 years for home invasion, 40 years for aggravated criminal sexual assault (penis to vagina), and 30 years for aggravated criminal sexual assault (penis to mouth), with the sentences to run concurrently.

¶ 5 Defendant appeals, arguing (1) he received ineffective assistance of counsel, (2) he was denied his constitutional right to confront witnesses, (3) he should receive a new trial because the State mentioned other sexual assaults that occurred in the area, (4) the amount of evidence presented regarding C.H. deprived him the right to a fair trial, and (5) the trial court erred by failing to conduct a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181, 188-89, 464 N.E.2d 1045, 1048-49 (1984)). We disagree and affirm.

¶ 6                                   I. BACKGROUND
¶ 7                                  A. The Indictment
¶ 8 In November 2011, the State charged defendant with (1) home invasion, (2) aggravated criminal sexual assault (penis to mouth), and (3) aggravated criminal sexual assault (penis to vagina). 720 ILCS 5/12-11(a)(1) (West 2010); *id.* § 11-1.30(a)(1). The State alleged that in September 2011, defendant, while armed with a knife, broke into A.P.'s dwelling and sexually assaulted her.

¶ 9                             B. The State's Notice of Intent
¶ 10 In October 2013, the State filed notice of intent to use evidence of other sex offenses. 725 ILCS 5/115-7.3(b) (West 2012). The State's motion stated the following:

> "It is alleged in this case that on September 19, 2011, the victim, A.P., *** awoke to find a black male holding a knife. The male threatened her with the knife and then placed his penis in her mouth. He also choked her with his hands and placed his penis in her vagina. *** It was determined that the male had entered through a bedroom window. While [the victim] was seeking treatment at the hospital, swabs were taken from the victim and sent to the Illinois State Police Forensic Science Crime Laboratory.

Testing of one of the swabs revealed the presence of semen. DNA testing was conducted on this specimen and it was determined that the defendant *** could not be excluded as a contributor of the identified male DNA[.]

The defendant is also charged in Sangamon County Circuit Court case number 11-CF-888 with Home Invasion, two counts of Aggravated Criminal Sexual Assault, and Residential Burglary.

In 11-CF-888 it is alleged that on October 6, 2011, the victim, C.H., was asleep in bed *** and awoke to find a black male holding a knife to her throat. The male *** put his mouth on her neck, breasts, and vagina *** and choked her. *** It was determined that he had entered the residence through a window. While seeking treatment at the hospital, swabs were taken from the victim and sent to the Illinois State Police Forensic Crime Science Laboratory. Testing on one of the swabs revealed the presence of DNA which was a match to the DNA of the defendant[.]

The probative value of the proposed evidence outweighs any undue prejudice *** as demonstrated by the proximity in time between the two incidents, the degree of factual similarity between the two incidents, as well as other relevant factors and circumstances."

¶ 11 Defendant argued the two crimes were dissimilar and that introduction of evidence from this second crime would be unfairly prejudicial. In November 2013, the trial court granted the State's motion, concluding that there was a "strong similarity" between the two crimes and that the probative value outweighed any prejudicial effect. Accordingly, the court allowed the State to introduce this other-crime evidence as long as it was otherwise admissible. The court later denied defendant's motion to reconsider.

¶ 12                          C. The State's Motion *in Limine*

¶ 13 In January 2016, the State filed a motion *in limine* to exclude evidence of A.P.'s past sexual conduct. 725 ILCS 5/115-7(a) (West 2016). In this motion, the State conceded that "DNA evidence was found on the victim *** and her clothing that was traced to having originated from three separate individuals besides Defendant and A.P. Further, A.P. acknowledges having had prior sexual relations with individuals prior to the night of the alleged offense in the present case."

¶ 14 In response, defendant conceded that the two samples of DNA evidence found on A.P.'s clothing were from consensual sexual partners and that this evidence should be excluded. However, defendant argued that the third DNA sample, which was semen from an unidentified male found on A.P.'s vaginal swab, should not be excluded because "the victim says she was *** vaginally assaulted."

¶ 15 Later that month, the trial court granted the State's motion *in limine*, concluding that the "evidence is coming in solely to show prior sexual history and that is clearly *** prohibited by the Rape Shield Statute." See *id.*

¶ 16 Defendant would later make an oral motion to reconsider, arguing that the other DNA found on A.P.'s vaginal swab was evidence that an individual other than defendant was responsible for assaulting A.P. The trial court denied this motion.

### D. The Jury Trial

In January 2016, this case proceeded to a jury trial.

#### 1. *The Evidence of the Attack on A.P.*

A.P. testified that on the night of September 19, 2011, she was asleep in her apartment in Springfield, Illinois. She awoke to find a black male with his face covered approaching her. The man put his hands around her neck and touched her side with a knife. The man grabbed A.P., turned her over, and put his penis into her vagina. The man eventually threw her to the ground and told her to perform oral sex upon him. The man subsequently turned A.P. over, put his penis back into her vagina, and eventually ejaculated on her back. A.P. testified that she never got a good look at the man because his face was covered.

When the man left, A.P. called the police. Police officers testified that they found a knife in the bedroom. A.P. was taken to a hospital, and nurse Theresa Duncan testified that she swabbed A.P.'s mouth, vagina, vaginal area, and outer anal area for bodily fluids. Duncan noted that defendant's DNA was later discovered on the anal swab. She stated that it would be normal to find sperm cells on an anal swab even if there was not anal penetration.

Cory Formea, a forensic scientist for the Illinois State Police Crime Lab, testified that sperm cells were found on A.P.'s anal swab. He concluded that defendant could not be excluded as the contributor of the DNA and that this DNA profile would occur in "one in [every] 840 trillion blacks." Formea conceded that defendant's DNA was not found on A.P.'s oral or vaginal swab. Brian Johnston, a detective for the Springfield Police Department, testified that he investigated the attack on A.P.

#### 2. *The Evidence of the Attack on C.H.*

Mike Flynn, an investigator for the Springfield Police Department, stated that he investigated the attack on C.H. He stated that C.H. was asleep in her home on October 6, 2011, and was sexually assaulted. Flynn testified that he believed that the person responsible for the attack on C.H. may have been responsible for the attack on A.P. because of the similarity between the two attacks.

C.H. testified that on the night of October 6, 2011, she awoke to find a black male holding a knife to her throat. The man licked her breasts and vagina and stole money from her. After he left, C.H. called the police and went to the hospital.

A nurse testified that she examined and swabbed C.H.'s neck, chest, breasts, and genitals at the hospital. Dana Pitchford, a forensic scientist for the Illinois State Police, noted that saliva was found on C.H.'s chest swab. She testified that the male DNA found in the saliva matched defendant's DNA. She elaborated that "this profile would be expected to occur in approximately one in 2.8 quintillion black[s]."

#### 3. *The Interrogation Video*

On the first day of trial, outside the presence of the jury, defendant made an oral motion to exclude the video of his interrogation for the alleged sexual assault of C.H. Defendant argued that the video had no probative value and was prejudicial. The trial court denied the motion.

¶ 29        On the second day of trial, before the video was played to the jury, the State informed the trial court that it had modified the video to "take out certain items that were objectionable by the defense." Defendant consented to the introduction of this modified video.

¶ 30        During the modified interrogation video, Flynn and Brian Johnston accused defendant of sexual assault. They informed him that they had a solid case against him because his DNA was found on an alleged victim of sexual assault. They stated they believed he was responsible for the alleged assault on C.H. and implied that he was responsible for other sex crimes. The video also contained allegedly prejudicial information such as (1) defendant's admission that he was on welfare, (2) defendant's explicit description of his sexual history, (3) defendant's admission that he had cheated on romantic partners, (4) the police accusations that defendant was guilty, and (5) the mentioning of other sexual assaults that had occurred throughout the state.

¶ 31        However, at all times on the modified interrogation video, defendant remained adamant that he did not sexually assault anyone. Instead, after describing his numerous sexual conquests, defendant argued that he would never rape anyone because he can get all the sex he ever needed. Defendant repeatedly and vigorously denied ever committing rape or sexual assault.

¶ 32                                          4. *The Defense*

¶ 33        Defendant declined to testify on his own behalf. James Ravellette, a forensic scientist, testified that defendant's DNA was not found on A.P.'s vaginal or oral swab. On cross-examination, Ravellette conceded that defendant could not be excluded as the contributor of the DNA from A.P.'s anal swab. Moreover, Ravellette conceded that the DNA profile on the anal swab would only occur in one out of every 840 trillion individuals "[i]n the African[-]American population."

¶ 34                                       5. *The Guilty Verdict*

¶ 35        The jury convicted defendant of home invasion and of both counts of aggravated criminal sexual assault.

¶ 36                    E. The Motion for a New Trial and Defendant's Sentence

¶ 37        In March 2016, defendant filed a motion for a new trial, arguing the trial court erred by (1) allowing in evidence of C.H.'s attack and (2) granting the State's motion to exclude any reference to the unknown semen found on A.P.'s vaginal swab.

¶ 38        In April 2016, the trial court conducted a hearing on the motion, and defendant argued that the court should grant a new trial because there was "a trial within a trial" regarding the issue of whether defendant assaulted C.H. While making this argument, defendant's attorney stated the following:

> "[W]e had a trial within a trial when you allowed testimony [regarding C.H.'s case]. The thing that really bothers me *** is that [defendant] had another attorney [in the case where the State charged defendant with assaulting C.H.] I was not [the] attorney [in that case]. So all the testimony about [C.H.'s assault] *** I was generally aware, of course, but I couldn't possibly do as good a job defending my client since it wasn't my case. So I think that perhaps we all should have thought of that, State's Attorney as well. But I think that is first and foremost a reason for a new trial.

"I was taken by surprise at the depth of the evidence and testimony brought by the State's Attorney *** [regarding the other] alleged victim, forensic scientists, I had no chance to review that. As you know, had I been thinking about that case, I would have asked for review by our own experts. So that alone, I think, is reason for a new trial."

¶ 39 The trial court denied the motion for a new trial and sentenced defendant to 30 years for home invasion, 40 years for aggravated criminal sexual assault (penis to vagina), and 30 years for aggravated criminal sexual assault (penis to mouth), with the sentences to run concurrently.

¶ 40 This appeal followed.

¶ 41                                   II. ANALYSIS

¶ 42 Defendant appeals, arguing (1) he received ineffective assistance of counsel, (2) he was denied his constitutional right to confront witnesses, (3) he should receive a new trial because the State mentioned other sexual assaults that occurred in the area, (4) the amount of evidence presented regarding C.H. deprived him of the right to a fair trial, and (5) the trial court erred by failing to conduct a *Krankel* hearing. We address these issues in turn.

¶ 43                       A. Ineffective Assistance of Counsel

¶ 44 Defendant argues that he received ineffective assistance of counsel because his attorney failed to object to the introduction of the modified interrogation video. Alternatively, defendant argues that he received ineffective assistance of counsel because his attorney failed to file a motion to suppress the interrogation video prior to the start of trial. We disagree.

¶ 45                           1. *The Applicable Law*

¶ 46 To establish ineffective assistance of counsel, a defendant must show that counsel's performance was (1) deficient and (2) prejudicial. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10, 93 N.E.3d 664. When, as here, a claim of ineffective assistance of counsel was not raised in the trial court, our review is *de novo*. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24, 42 N.E.3d 885.

¶ 47 To establish deficient performance, a defendant must show that his attorney's performance fell below an objective standard of reasonableness. *Id.* Judicial review of counsel's performance is highly deferential. *People v. McGath*, 2017 IL App (4th) 150608, ¶ 38, 83 N.E.3d 671. A defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 327, 948 N.E.2d 542, 547 (2011). Trial strategy includes decisions such as what matters to object to and when to object. *People v. Ramsey*, 2017 IL App (1st) 160977, ¶ 36, 86 N.E.3d 1068. "[C]ounsel's strategic choices are virtually unchallengeable." *Manning*, 241 Ill. 2d at 333.

¶ 48 To establish prejudice, the defendant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 229 Ill. 2d 1, 4, 890 N.E.2d 424, 426 (2008). In the context of failure to file a motion to suppress, prejudice arises when a defendant demonstrates (1) that the unargued suppression motion would have been meritorious and (2) that a reasonable probability exists that the outcome of the trial would have been different had the evidence been suppressed. *People v. Henderson*, 2013 IL 114040, ¶ 15, 989 N.E.2d 192. A reasonable probability is defined as a

probability which undermines confidence in the outcome of the trial. See *id.* Failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Fellers*, 2016 IL App (4th) 140486, ¶ 23, 77 N.E.3d 994.

¶ 49                                              2. *This Case*

¶ 50    First, defendant fails to demonstrate that his attorney's performance was deficient. *Manning*, 241 Ill. 2d at 327. Regarding the failure to file a motion to suppress and the failure to object to the modified video, counsel could have reasonably concluded that defendant's repeated denials and justifications for why he would not have committed sexual assault vastly outweighed the collateral prejudice. We acknowledge that the modified video had potentially prejudicial elements such as (1) defendant's admission that he was on welfare, (2) defendant's explicit description of his sexual history, (3) defendant's admission that he had cheated on romantic partners, (4) the police accusations that defendant was guilty, and (5) the mentioning of other sexual assaults throughout the state. However, despite these potentially prejudicial elements, the video contained defendant's frequent and vehement denials that he ever committed sexual assault. These denials could certainly have been viewed by the jury as undermining the State's case and had the potential to be particularly significant because defendant chose not to testify at trial. Thus, defendant's vehement denials that he committed these crimes came before the jury solely as a result of the admission of the modified video.

¶ 51    Further, as opposed to in-court testimony, such denials were not subject to the State's cross-examination or impeachment at trial. Defense counsel's strategic use of the modified video is shown by his closing argument, which reads as follows:

> "The video that we saw of [defendant] was obviously brought to make him look bad, discredit him. But the thing that I noticed about that two-hour tape was that he was very consistent. He didn't know he was going to be arrested. He was very consistent. He maintained that he didn't know anything about this event that the police officers were inquiring about. And they used all the techniques that police officers can and often do. And after over two hours, I didn't see that he made any admission or any suggestion that he was involved in this event. So I think it should be clear to you that even though [defendant] did not testify, clearly *** you can see that at an early time in the investigation that he knew nothing of this incident with either lady."

¶ 52    As to why counsel initially objected at trial but failed to file a pretrial motion to suppress, we first note that trial strategy includes decisions such as when to object. *Ramsey*, 2017 IL App (1st) 160977, ¶ 36. Moreover, as compared to a motion to suppress filed weeks in advance, counsel may have made this oral objection in order to gain a last-minute concession from the State. In that regard, counsel was apparently successful because the State voluntarily removed otherwise irrelevant and prejudicial material from the video the day before it was scheduled to be played to the jury. For the reasons stated, we conclude that defendant fails to demonstrate that his counsel's performance was deficient.

¶ 53    Second, defendant fails to establish prejudice. Defendant's link to the sexual assault on C.H., which was admissible to show defendant's propensity to commit similar crimes, was indisputable. Moreover, the DNA evidence linking defendant to A.P.'s assault was overwhelming. However, by the State's introduction of the interrogation video, the jury was able to hear defendant's repeated and emphatic claims of innocence. Furthermore, such statements were not subject to the State's cross-examination or impeachment. Thus, the video

could be viewed as an asset to defendant's case. Accordingly, we conclude that, even if we assume that trial counsel could have excluded the entire video or specific portions of it, there is not a reasonable probability that the result of the trial would have been different. *Houston*, 229 Ill. 2d at 4. Defendant's claim of ineffective assistance of counsel fails. *Fellers*, 2016 IL App (4th) 140486, ¶ 23.

¶ 54                    B. The Rape Shield Statute

¶ 55    Defendant argues that he had a constitutional right to confront A.P. and the State's expert witness about the unidentified semen found on A.P.'s vaginal swab because "there is a possibility that the person whose DNA was found on A.P.'s vaginal swab was also the source of the DNA on the anal swab and was the attacker." We disagree, concluding that this evidence would not have made a meaningful contribution to the fact-finding enterprise. *People v. Maxwell*, 2011 IL App (4th) 100434, ¶ 76, 961 N.E.2d 964.

¶ 56                    1. *The Applicable Law*

¶ 57    The purpose of the rape shield statute is "to prevent the defendant from harassing and humiliating the complaining witness with evidence of *** specific acts of sexual conduct with persons other than defendant, since such evidence has no bearing on whether she consented to sexual relations with the defendant." *People v. Summers*, 353 Ill. App. 3d 367, 373, 818 N.E.2d 907, 912 (2004). The rape shield statute, in pertinent part, provides as follows:

> "In prosecutions for *** aggravated criminal sexual assault *** the prior sexual activity or the reputation of the alleged victim *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required ***." 725 ILCS 5/115-7(a) (West 2016).

¶ 58    The due-process clause of the fourteenth amendment and the confrontation clause of the sixth amendment guarantee a criminal defendant the right to a meaningful opportunity to present a complete defense. U.S. Const., amend. VI, XIV; *People v. Santos*, 211 Ill. 2d 395, 412, 813 N.E.2d 159, 168 (2004). An essential component of procedural fairness is an opportunity to be heard. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Moreover, notwithstanding the protections of the rape shield statute, a defendant's right under the confrontation clause may require the admission of a victim's prior sexual activity when such evidence is relevant and shows the alleged victim's " 'bias, prejudice or motive.' " *Santos*, 211 Ill. 2d at 415 (quoting *People v. Sandoval*, 135 Ill. 2d 159, 174-75, 552 N.E.2d 726, 733 (1990)).

¶ 59    The "constitutionally required" exception to the rape shield statute should be construed narrowly but also fairly. (Internal quotation marks omitted.) *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 17, 61 N.E.3d 257. This statute must not be applied to obscure relevant evidence that bears directly on guilt or innocence. *People v. Johnson*, 2014 IL App (2d) 121004, ¶ 42, 36 N.E.3d 821. However, an alleged victim's sexual history is not constitutionally required to be admitted unless it would make a meaningful contribution to the fact-finding enterprise. *Maxwell*, 2011 IL App (4th) 100434, ¶ 76. The constitution does not require the admission of evidence which is only marginally relevant or which poses an undue risk of harassment, prejudice, or confusion of the issues. *Crane*, 476 U.S. at 689-90.

¶ 60    The trial court's evidentiary rulings made under the rape shield statute are reviewed for an abuse of discretion. *People v. Sandifer*, 2016 IL App (1st) 133397, ¶ 26, 65 N.E.3d 969. A trial court abuses its discretion when it acts arbitrarily or when no reasonable person would take the view adopted by the trial court. *People v. Chambers*, 2016 IL 117911, ¶ 68, 47 N.E.3d 545.

¶ 61                                    2. *This Case*

¶ 62    In this case, A.P. identified her attacker as a black male. Unidentified semen was found on A.P.'s vaginal swab, and defendant could not be excluded as the potential source of the DNA found on A.P.'s anal swab. Defendant's own expert witness conceded that the DNA profile found on A.P.'s anal swab would only occur in one out of every 840 trillion individuals "[i]n the African[-]American population." Defendant argues that he had a constitutional right to confront A.P. and the State's expert witness about the unidentified semen found on A.P.'s vaginal swab because "there is a possibility that the person whose DNA was found on A.P.'s vaginal swab was also the source of the DNA on the anal swab and was the attacker."

¶ 63    We conclude that—under the facts of this case—the unidentified semen found on A.P.'s vaginal swab was not constitutionally required to be admitted. 725 ILCS 5/115-7(a) (West 2016). Due to the statistical improbabilities that an unidentified person other than defendant contributed both the semen on A.P.'s vaginal swab and anal swab, this evidence would not make a meaningful contribution to the fact-finding enterprise. *Maxwell*, 2011 IL App (4th) 100434, ¶ 76.

¶ 64    Instead, at best, the unidentified semen would be marginally relevant. *Johnson*, 2014 IL App (2d) 121004, ¶ 42. Likewise, this evidence would pose an undue risk of harassment, prejudice, and confusion of the issues. *Crane*, 476 U.S. at 689-90. Finally, assuming the unidentified semen was from a consensual partner, such evidence would have "no bearing on whether [A.P.] consented to sexual relations with the defendant." *Summers*, 353 Ill. App. 3d at 373.

¶ 65    Likewise, the trial court's action did not deprive defendant of his right to confront witnesses or to present the theory of his case. Defendant confronted the State's expert witness on cross-examination by demonstrating that his DNA was not found on A.P.'s vaginal swab and that he was not a direct match on A.P.'s anal swab. Further, this is not a case where a defendant contends that he had consensual sex with a victim but argues that another unknown individual subsequently raped the victim. Instead, defendant's theory was that he had never had sex with A.P. If the jury would have believed this argument, defendant would not have been found guilty of criminal sexual assault. Accordingly, under the facts of this case, the trial court did not abuse its discretion in denying the introduction of this evidence. *Chambers*, 2016 IL 117911, ¶ 68.

¶ 66                            C. Related Sexual Assaults

¶ 67    The State played an interrogation video of defendant in which the investigators insinuated that defendant may have been responsible for other crimes in the area. Likewise, various State witnesses discussed—in passing—that other sexual assaults had occurred in the area. Defendant argues that he should receive a new trial because the State "repeatedly presented irrelevant and unduly prejudicial evidence that there were other 'related' sexual assaults that occurred around the time of the charged offense, suggesting to the jury that [defendant] was responsible for numerous assaults." Defendant concedes that he forfeited this issue but argues

he prevails under the plain-error doctrine. We disagree.

¶ 68                                    1. *The Applicable Law*

¶ 69        To preserve an alleged error for appeal, a defendant must object at trial and file a written posttrial motion. *People v. Colyar*, 2013 IL 111835, ¶ 27, 996 N.E.3d 575. Failure to do either results in forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675.

¶ 70        The plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider an unpreserved error when (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Ely*, 2018 IL App (4th) 150906, ¶ 15, 99 N.E.3d 566.

¶ 71        The usual first step under either prong of the plain-error doctrine is to determine whether there was a clear or obvious error at all. *People v. Matthews*, 2017 IL App (4th) 150911, ¶ 17, 93 N.E.3d 597. When a defendant claims first-prong error, he must prove that an error occurred and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. *Id.* ¶ 26. In determining if the evidence was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of the evidence within the context of the case. *Sebby*, 2017 IL 119445, ¶ 53. If the defendant meets his burden, he has demonstrated actual prejudice, and his conviction should be reversed. *Id.* ¶ 44.

¶ 72        When a defendant claims second-prong error, he must prove that a structural error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613-14, 939 N.E.2d 403, 413-14 (2010). A structural error is an error which renders a criminal trial fundamentally unfair or unreliable in determining a defendant's guilt or innocence. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101, 943 N.E.2d 1249, 1258-59 (2011). Structural errors occur in very limited circumstances. *People v. Averett*, 237 Ill. 2d 1, 13, 927 N.E.2d 1191, 1198 (2010).

¶ 73        The defendant bears the burden of persuasion at all times under the plain-error doctrine. *People v. Suggs*, 2016 IL App (2d) 140040, ¶ 61, 57 N.E.3d 1261. If the defendant fails to meet his burden, the issue is forfeited, and the reviewing court will honor the procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1255 (2010).

¶ 74        However, the plain-error doctrine only applies in cases involving procedural default. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 29, 92 N.E.3d 494. The plain-error doctrine does not apply to affirmative acquiescence. *Id.* That means that, when defense counsel affirmatively acquiesces to actions taken by the trial court, any potential claim of error on appeal is waived and defendant's only available challenge is to allege that he received ineffective assistance of counsel. *People v. Young*, 2013 IL App (4th) 120228, ¶¶ 25-26, 996 N.E.2d 671.

¶ 75                                        2. *This Case*

¶ 76        First, the mentioning of other sexual assaults in addition to A.P. and C.H. occurred almost exclusively during the interrogation video. However, as we discussed earlier, defense counsel affirmatively acquiesced to the introduction of this video. Accordingly, defendant has waived these errors for appeal and cannot claim this error under the plain-error doctrine. *Id.*

¶ 77        Second, the evidence was not closely balanced. The similarities between C.H.'s case and A.P.'s case were stark and overwhelming. Further, as mentioned, the DNA evidence against

defendant was substantial. Last, the vague statements that other crimes occurred in the area did not come close to amounting to structural error. Accordingly, this argument is without merit, and we honor the procedural default. *Ahlers*, 402 Ill. App. 3d at 734.

¶ 78                              D. The Evidence of C.H.'s Assault

¶ 79    Defendant argues that he was deprived of his right to a fair trial because the evidence of the alleged assault against C.H. "was presented with unnecessary detail, [the] probative value of the evidence was substantially outweighed by undue prejudice, and *** the other-crimes evidence constituted an improper mini-trial." We disagree.

¶ 80                              1. *The Applicable Law*

¶ 81    Illinois Rule of Evidence 404(b) provides that:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by sections 115-7.3, 115-7.4, and 115-20 of the Code of Criminal Procedure (725 ILCS 5/115-7.3, 725 ILCS 5/115-7.4, and 725 ILCS 5/115-20). Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

¶ 82    Section 115-7.3 of the Code of Criminal Procedure, in pertinent part, provides as follows:

> "(a) This Section applies to criminal cases in which:
>
>     (1) the defendant is accused of *** aggravated criminal sexual assault ***[.]
>
>                              * * *
>
> (b) If the defendant is accused of an offense set forth in paragraph (1) or (2) of subsection (a) *** evidence of the defendant's commission of another offense or offenses set forth in paragraph (1), (2), or (3) of subsection (a) *** may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant.
>
> (c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:
>
>     (1) the proximity in time to the charged or predicate offense;
>
>     (2) the degree of factual similarity to the charged or predicate offense; or
>
>     (3) other relevant facts and circumstances." 725 ILCS 5/115-7.3(a)-(c) (West 2016).

¶ 83    The exception created by section 115-7.3 incorporates the rules of evidence. *Id.* § 115-7.3(b). Illinois Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 84    A trial court's balancing determination pursuant to Rule 403 is subject to an abuse of discretion standard. *Hoffman v. Northeast Illinois Regional Commuter R.R. Corp.*, 2017 IL App (1st) 170537, ¶ 49, 99 N.E.3d 16. An appellate court reviews the trial court's admission of other-crimes evidence under an abuse of discretion standard. *People v. Braddy*, 2015 IL App

(5th) 130354, ¶ 27, 32 N.E.3d 39. A trial court abuses its discretion when it acts arbitrarily or when no reasonable person would take the view adopted by the trial court. *Chambers*, 2016 IL 117911, ¶ 68.

¶ 85    In *People v. Walston*, 386 Ill. App. 3d 598, 618, 900 N.E.2d 267, 286 (2008), the Second District evaluated the amount of evidence to be admitted under section 115-7.3. The court noted that, under section 115-7.3, the State "has a compelling reason to introduce thorough evidence to establish a defendant's propensity." *Id.* at 613. The court also gave an "expansive interpretation" regarding the amount of evidence that can be allowed under section 115-7.3. *Id.* at 625. Regarding the danger of "mini-trials," the court reasoned that the "danger of unfair prejudice [from a mini-trial] in the context of a section 115-7.3 case, as opposed to a common-law other-crimes case, is greatly diminished." *Id.* at 619. Finally, the court reasoned that any "limits under section 115-7.3 on mini-trials based on judicial economy must *** defer largely to prosecutorial discretion." *Id.* at 621.

¶ 86                                         2. *This Case*

¶ 87    First, we reject defendant's argument that the State presented evidence from C.H.'s case "with unnecessary detail." As stated in *Walston*, the State had "a compelling reason to introduce thorough evidence to establish a defendant's propensity." *Id.* at 613. To that point, during defendant's opening argument, defense counsel explicitly stated that the State bore the burden of proving that defendant committed the assault against C.H. and that the assault against C.H. was merely an "allegation."

¶ 88    Second, the trial court's balancing determination pursuant to Rule 403 was not an abuse of discretion. *Hoffman*, 2017 IL App (1st) 170537, ¶ 49; 725 ILCS 5/115-7.3(c) (West 2016). In this case, the State introduced comprehensive evidence of defendant's alleged attack on C.H., including (1) C.H.'s testimony, (2) testimony from a nurse who evaluated C.H. at the hospital, (3) a forensic scientist who testified that defendant's DNA was found on C.H.'s chest swab, and (4) the interrogation video regarding C.H.'s assault. This evidence was highly probative because the jury could use this evidence for propensity purposes. 725 ILCS 5/115-7.3(b) (West 2016). Conversely, although this evidence was certainly harmful to defendant's case, we do not view it as unfairly prejudicial. *People v. Barnes*, 2013 IL App (1st) 112873, ¶ 44, 3 N.E.3d 330 (unfair prejudice means an improper basis upon which to make a decision such as emotion, sympathy, hatred, contempt, or horror). Instead, in sexual assault cases, a defendant's propensity to commit such crimes is a proper factor for the jury to consider. 725 ILCS 5/115-7.3(b) (West 2016). Considering the similarity between the sexual assault of A.P. and C.H. and the strength of the DNA evidence, we conclude that the trial court's balancing determination pursuant to Rule 403 was not an abuse of discretion. See *Hoffman*, 2017 IL App (1st) 170537, ¶ 49; 725 ILCS 5/115-7.3(c) (West 2016).

¶ 89    Last, we reject defendant's argument that an improper mini-trial occurred. As stated in *Walston*, the "danger of unfair prejudice [from a mini-trial] in the context of a section 115-7.3 case, as opposed to a common-law other-crimes case, is greatly diminished." *Walston*, 386 Ill. App. 3d at 619. Instead, this "mini-trial" was necessary to establish defendant's involvement in the attack on C.H.

¶ 90                                    E. *Krankel* Hearing

¶ 91    In this case, defense counsel filed a motion for a new trial and argued that the trial court erred by (1) allowing in evidence of C.H.'s attack and (2) granting the State's motion to exclude any reference to the unknown semen found on A.P.'s vaginal swab. When the matter proceeded to a hearing, defense counsel argued that the court should grant a new trial because there was "a trial within a trial" regarding the issue of whether defendant assaulted C.H. When making this argument, defendant's attorney stated as follows:

> "[W]e had a trial within a trial when you allowed testimony [regarding C.H.'s case]. The thing that really bothers me *** is that [defendant] had another attorney [in the case where the State charged defendant with assaulting C.H.] I was not [the] attorney [in that case]. So all the testimony about [C.H.'s assault] *** I was generally aware, of course, but I couldn't possibly do as good a job defending my client since it wasn't my case. ***.
>
> I was taken by surprise at the depth of the evidence and testimony brought by the State's Attorney, *** [regarding the] alleged victim, forensic scientists, I had no chance to review that. As you know, had I been thinking about that case, I would have asked for review by our own experts. So that alone, I think, is reason for a new trial."

¶ 92    Based upon this, defendant argues that the trial court erred by failing to conduct a *Krankel* hearing. We disagree.

¶ 93                                  1. *The Applicable Law*

¶ 94    When a defendant who has been convicted brings a clear claim asserting ineffective assistance of counsel, either orally or in writing, the trial court's duty to conduct a *Krankel* inquiry is triggered. *People v. Ayres*, 2017 IL 120071, ¶ 18, 88 N.E.3d 73. However, the trial court is not required to *sua sponte* conduct a *Krankel* inquiry absent a clear claim of ineffective assistance of counsel. *People v. Villanueva*, 2017 IL App (3d) 150036, ¶ 50, 82 N.E.3d 565.

¶ 95    A *Krankel* hearing contains two steps. *Id.* ¶ 46. First, the trial court makes a preliminary inquiry to examine the factual basis of the claim. *Id.* If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, the trial court is not required to appoint new counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127. Second, if the allegations show possible neglect of the case, new counsel is appointed to represent the defendant in a full hearing on his claim. *Villanueva*, 2017 IL App (3d) 150036, ¶ 46. Whether a defendant was entitled to a *Krankel* hearing is a legal question reviewed *de novo*. *People v. Jackson*, 2016 IL App (1st) 133741, ¶ 68, 50 N.E.3d 66.

¶ 96    In *People v. Willis*, 2013 IL App (1st) 110233, ¶ 1, 997 N.E.2d 947, the defendant was 16 years old when he committed first degree murder. The defendant was tried as an adult pursuant to the then-mandatory automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2010)). *Willis*, 2013 IL App (1st) 110233, ¶ 1. After he was found guilty, defense counsel filed a motion for a new trial in which he alleged that he rendered ineffective assistance of counsel. *Id.* ¶ 62. Counsel stated that he failed to use due diligence to insure that a witness would be available to testify at trial, that this witness was material, and that his client was prejudiced as a result. *Id.* At a hearing on the motion, the State noted that counsel's allegation created a conflict of interest because he would have to argue his own ineffectiveness. *Id.* As a result, counsel struck the allegation of ineffective assistance of

counsel, and the case was continued. *Id.* When the court later heard arguments on the motion, neither defendant nor his attorney referred to the now-stricken allegations of ineffective assistance of counsel, and the court made no inquiry into them. *Id.*

¶ 97   On appeal, the defendant argued that the trial court erred by failing to conduct a *Krankel* inquiry. *Id.* ¶ 60. The First District agreed, concluding that "the trial court has a duty to conduct an adequate inquiry when allegations of ineffective assistance arise. [Citation.] The trial court [cannot] simply ignore or fail to address a claim of ineffective assistance of counsel without consideration of the claim's merits." *Id.* ¶ 72. Accordingly, the court remanded the case for a proper *Krankel* inquiry. *Id.* ¶ 74. In reaching this conclusion, the court took notice of the defendant's young age, reasoning as follows:

> "Given that [the defendant] was a minor at the time of his trial, we cannot reasonably expect him to raise the issue of his trial counsel's ineffective assistance on his own. A juvenile would be expected to be more at the mercy of counsel than an adult, and less likely to be cognizant and aware of his legal rights." *Id.* ¶ 70.

¶ 98   In *McGath*, 2017 IL App (4th) 150608, ¶ 1, the defendant was convicted of unlawful delivery of a controlled substance. Counsel filed a motion for a new trial arguing, in part, that a witness favorable to the defense was present for trial and that he did not call her to testify. *Id.* ¶ 17. The defendant did not allege his counsel's ineffectiveness in a *pro se* motion. See *id.* ¶ 52. On appeal, the defendant argued that the trial court erred by failing to conduct a *Krankel* hearing because counsel essentially argued his own ineffectiveness. *Id.* ¶ 45. This court disagreed, explaining that "*Krankel* and its progeny apply *only* to posttrial claims raised by a defendant *pro se*" (emphasis in original) (*id.* ¶ 49), and "a *Krankel* hearing is a term of art to describe the hearing the court must conduct when a defendant *pro se* has raised a posttrial claim regarding his counsel's ineffective assistance." *Id.* ¶ 51. As such, this court concluded that "[b]ecause defendant did not raise a *pro se* posttrial claim of ineffective assistance of counsel, there was no reason for the trial court to conduct a *Krankel* hearing." *Id.* ¶ 52.

¶ 99                                              2. *This Case*

¶ 100   Defendant argues that *Willis* is applicable to his case. We reject this argument because (1) we disagree with the holding in *Willis* and, in the alternative, (2) *Willis* is distinguishable from the facts in this case.

¶ 101   We do not agree with the holding in *Willis* because, as the Illinois Supreme Court has repeatedly held, a *Krankel* hearing is required when the *defendant* who has been convicted brings a claim *pro se*, asserting ineffective assistance of counsel. *Ayres*, 2017 IL 120071, ¶ 11 ("The common-law procedure, which has evolved from our decision in *Krankel*, is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel."); *Jolly*, 2014 IL 117142, ¶ 29 (a *Krankel* hearing is required "when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel"); *People v. Patrick*, 2011 IL 111666, ¶ 32, 960 N.E.2d 1114 ("Following *Krankel*, this court clarified that newly appointed counsel is not automatically required in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel."); *People v. Taylor*, 237 Ill. 2d 68, 76, 927 N.E.2d 1172, 1176 (2010) ("nowhere in defendant's statement at sentencing did he specifically complain about his attorney's performance, or expressly state he was claiming ineffective assistance of counsel") *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003) (a *Krankel* inquiry is required when "a defendant presents a *pro se* posttrial claim of ineffective

assistance of counsel"); *People v. Pecoraro*, 144 Ill. 2d 1, 15, 578 N.E.2d 942, 948 (1991) ("*Krankel* is a fairly fact-specific case, and the circumstances in the case at hand, where defendant retained his own private counsel and did not request that he be represented by other counsel, do not warrant the application of *Krankel*"); *Krankel*, 102 Ill. 2d at 188-89 (a hearing is required when a defendant brings a *pro se* motion alleging ineffective assistance of counsel).

¶ 102　　The Illinois Supreme Court has never held that a *Krankel* hearing may be triggered by a defense counsel's representations in the absence of the defendant's *pro se* motion raising a claim of ineffective assistance of counsel, and we view that holding from *Willis* as inconsistent with Illinois Supreme Court doctrine. See *Pecoraro*, 144 Ill. 2d at 15 ("*Krankel* is a fairly fact-specific case, and the circumstances in the case at hand *** do not warrant the application of *Krankel*"). Accordingly, we reaffirm that "*Krankel* and its progeny apply *only* to posttrial claims raised by a defendant *pro se*." (Emphasis in original.) *McGath*, 2017 IL App (4th) 150608, ¶ 49.

¶ 103　　Second, even if we were to agree with the rationale of *Willis*, we conclude that it is distinguishable. In this case, unlike in *Willis*, counsel's motion for a new trial did not allege that ineffective assistance of counsel was an independent reason for a new trial. See *Willis*, 2013 IL App (1st) 110233, ¶ 62. Likewise, counsel's dialogue at the hearing did not constitute a clear admission of ineffective assistance of counsel because counsel did not explicitly state that his performance was objectively unreasonable or prejudicial. Instead, counsel vaguely argued that defendant would have benefited by having a single attorney in both cases. These vague statements regarding counsel's performance did not constitute a clear claim of ineffective assistance of counsel warranting a *Krankel* inquiry. *Taylor*, 237 Ill. 2d at 77 (vague statements are not a clear claim of ineffective assistance of counsel).

¶ 104　　Further, in *Willis*, the defendant was 16 years old. In this case, by contrast, defendant is an adult with previous interactions with the criminal justice system. We conclude that, as compared to a minor, we can reasonably expect that an adult can raise any issue of his trial counsel's ineffective assistance on his own. Compare *Pecoraro*, 144 Ill. 2d at 15 (an adult defendant can be expected to retain new private counsel prior to the hearing of his posttrial motions), with *Willis*, 2013 IL App (1st) 110233, ¶¶ 69-70 (a minor cannot be reasonably expected to assert his trial counsel's ineffectiveness). Likewise, an adult is more independent of his attorney and is more likely to be aware of his legal rights. See *Willis*, 2013 IL App (1st) 110233, ¶ 70. Accordingly, by looking at the age and experience of the defendant in this case, *Willis* is further distinguished. See *id.* ¶¶ 1, 68-70.

¶ 105　　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 106　　For the reasons stated, we affirm the trial court's judgment.

¶ 107　　Affirmed.