NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200170-U

NO. 4-20-0170

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 13, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| LEONDOUS COLEMAN, | ) | No. 18CF1833 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Holder White and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held:* Defendant failed to establish his trial counsel was ineffective for not filing a
motion to suppress evidence based on defendant's initial seizure.

¶ 2    On December 17, 2019, a jury found defendant Leondous Coleman guilty of
possession of a controlled substance with intent to deliver. On January 27, 2020, the trial court
sentenced defendant to nine years in prison. After the trial court denied defendant's motion to
reconsider sentence on March 16, 2020, defendant filed this appeal arguing his trial counsel was
constitutionally ineffective because he did not argue in a motion to suppress that defendant's
initial seizure by the police was unconstitutional. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On December 21, 2018, the State charged defendant by information with unlawful
possession of a controlled substance with the intent to deliver (15 grams or more but less than

100 grams of a substance containing cocaine) (720 ILCS 570/401(a)(2)(A) (West 2018)) and unlawful possession of a controlled substance (15 grams or more but less than 100 grams of a substance containing cocaine) (720 ILCS 570/402(a)(2)(A) (West 2018)).

¶ 5    On April 16, 2019, defendant filed a motion to suppress custodial statements he made to the police, alleging he was not provided his *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436 (1966)). On June 6, 2019, the trial court held a hearing on defendant's motion to suppress. Officer Kyle Daniels of the Decatur Police Department testified the police received a report of shots fired in the area of 1660 North College Street in Decatur on December 19, 2018. Officer Daniels went to the area of the shooting and was provided a description of a suspect. While in the area, Officer Daniels saw an individual running down an alley. The individual did not match the description he was given of the shooter. However, the individual's behavior was suspicious. He was running and checking his surroundings. Although Officer Daniels had nothing to connect defendant to the shooting at that point, he decided he was going to stop defendant. After Officer Daniels eventually seized defendant and another officer arrived on the scene, Officer Daniels found a bag of cocaine in the area where he saw defendant emerge from an empty lot. Defendant was then transported to police headquarters and interviewed. Because defendant is not challenging the court's denial of his motion to suppress, we need not discuss defendant's custodial interrogation here.

¶ 6    On December 16, 2019, defendant's trial began. After the State dismissed the unlawful possession charged, defense counsel told the trial court:

> "I've talked to Mr. Coleman about the idea of filing a motion to suppress
> the stop itself. It was kind of unusual in the circumstances; but in my opinion,
> after looking at it and considering the law that I'm aware of, I don't think that

such a motion would be successful. But I've discussed with him whether or not to file it, just for purposes of the record, and he indicates that he wants to go ahead and go with the trial rather than delaying the trial by filing a motion that I believe would not be beneficial to his cause anyway[.]"

The court asked defendant if he had the opportunity to discuss filing a motion to suppress based on the stop itself. Defendant said he had. The court then asked defendant if he was ready to proceed to trial that day. Defendant said he was.

¶ 7        Detective Scott Marquis of the Decatur Police Department testified he was assigned to the Street Crimes Unit, which focuses on narcotics and firearm-related offenses and works with confidential sources. According to Detective Marquis, the bag recovered from the lawn contained an ounce of cocaine. He did not ask for the bag to be tested for fingerprints or DNA evidence and did not know if this was done. Detective Marquis testified an ounce of cocaine is a fairly large amount.

¶ 8        Aaron Roemer, a forensic scientist for the Illinois State Police, determined the 26.8 grams of white powder recovered by Officer Daniels contained cocaine. Roemer was not aware of any request for DNA or fingerprint testing to be conducted on the original packaging which contained the cocaine.

¶ 9        Officer Daniels testified he is a K-9 handler and was on duty on December 19, 2018. At approximately 3:15 p.m., he and other police officers responded to a call of shots fired near 1660 North College. After patrolling the area for approximately 15 minutes and while on Sawyer Street, Officer Daniels saw an individual running southbound in an alley between Edward Street and College Street. Officer Daniels testified:

"My attention was drawn to him, one, because he was running in an alley. It's not

typical. We're in a high crime area. Two, the way he was running, he was—it just wasn't your standard jog. His pace changed several times, you know, where he would come to an opening, slow down, look left to right, proceed and—yeah, so then that happens for several houses southbound. And then he turns eastbound through an empty lot towards Edward Street."

Officer Daniels drove in an attempt to get south of the individual who was running to intercept him. This individual turned out to be defendant. Although Officer Daniels knew defendant from prior encounters, he had not yet recognized him.

¶ 10    After turning north onto Edward Street from Olive Street, Officer Daniels was looking for defendant to emerge from the empty lot he had gone into. When defendant emerged from the lot, Officer Daniels and the man saw each other at the same time. Defendant stopped and was "frozen" in surprise. Defendant then looked straight ahead and walked out to the middle of Edward Street in a northeast direction. Officer Daniels pulled his squad car to the curb, planning to make contact with defendant. Based on defendant's actions, Officer Daniels was confident defendant had either just committed a crime or was preparing to commit a crime, and he planned to conduct a temporary seizure of defendant. As soon as Officer Allen opened the door to his police vehicle, defendant stopped abruptly and put his hands in the air before the officer said anything. When another police officer arrived on the scene, Officer Daniels walked out to the alley and the lot where he had seen defendant and found the bag containing cocaine. Officer Daniels then arrested defendant. The bag containing the cocaine was photographed and collected.

¶ 11    During an interview at the police station, Officer Daniels testified defendant accepted guilt for what had taken place and claimed ownership of the cocaine that was found.

Defendant told Officer Daniels he had picked the cocaine up 45 minutes earlier and was delivering it to someone in a white vehicle that was supposed to be on Sawyer Street between Edward Street and College Street. Officer Daniels then contacted Detective Marquis.

¶ 12　　On cross-examination, Officer Daniels stated he was patrolling an approximate 35-block area after he went to the location where gun shots had been reported. Officer Daniels admitted defendant's appearance did not completely match the description the police had been provided of the two suspects in the shooting. Further, Officer Daniels did not see defendant in possession of the drugs. However, after finding the drugs, Officer Daniels suspected the drugs belonged to defendant.

¶ 13　　Defendant chose not to testify at trial and did not present any evidence.

¶ 14　　The jury found defendant guilty of possession of a controlled substance with the intent to deliver.

¶ 15　　On December 19, 2019, defendant filed a motion for a new trial or for judgment notwithstanding the verdict. On January 27, 2020, the trial court denied defendant's motion and sentenced defendant to nine years in prison consecutive to defendant's sentence in Macon County case No. 18-CF-655 with three years of mandatory supervised release. Defendant received credit for his time in custody from December 19, 2018, to January 26, 2020. On January 30, 2020, defendant filed a motion to reconsider his sentence. On March 16, 2020, the trial court denied the motion.

¶ 16　　This appeal followed.

¶ 17　　　　　　　　　　　II. ANALYSIS

¶ 18　　On appeal, defendant argues his trial counsel was constitutionally ineffective for not challenging the legality of his initial seizure by Officer Daniels and not moving to suppress

the drug evidence and his statements to the police as the fruit of the illegal seizure. Citing *People v. Henderson*, 2013 IL 114040, ¶ 22, 989 N.E.2d 192, the State notes the record was not developed for the purpose of litigating whether defendant's seizure was justified. However, the State does not argue the record before this court is inadequate to address defendant's arguments. Likewise, defendant does not argue the record is insufficient for this court to address defendant's constitutional challenge. Instead, defendant relies not only on Officer Daniels's testimony but also his written reports that are part of the record to try to establish defendant's initial seizure was unlawful. In his reply brief, defendant indicated he did not contend Officer Daniels's reports and testimony were inaccurate or lacked credibility. Thus, we will address whether defendant has established his trial counsel was ineffective.

¶ 19        We apply a *de novo* standard of review to claims of ineffective assistance of counsel not raised in the trial court. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 46, 112 N.E.3d 657. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a *defendant must prove* (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance prejudiced the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163.

¶ 20        To satisfy the first prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and his or her performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. As for *Strickland*'s second prong, the defendant has to establish a reasonable probability exists the result of the proceedings would have been different but for counsel's errors. *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 19, 153 N.E.3d 1012. "In

the context of failure to file a motion to suppress, prejudice arises when a defendant demonstrates (1) that the unargued suppression motion would have been meritorious and (2) that a reasonable probability exists that the outcome of the trial would have been different had the evidence been suppressed." *Bates*, 2018 IL App (4th) 160255, ¶ 48.

¶ 21 A citizen has the right to be free from unreasonable searches and seizures under both the United States and Illinois Constitutions. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "The cornerstone of the fourth amendment is reasonableness, which seeks to balance the interest in according discretion in enforcing the law for the community's protection and safeguarding against invasions of citizens' privacy." *People v. Hill*, 2020 IL 124595, ¶ 19, 162 N.E.3d 260. Under the fourth amendment to our federal constitution, reasonableness normally requires a warrant supported by probable cause. *People v. Love*, 199 Ill. 2d 269, 275, 769 N.E.2d 10, 14 (2002).

¶ 22 However, a police officer may conduct a brief, investigatory stop of an individual if the officer has a reasonable belief the individual has committed or is about to commit a crime. *People v. Timmsen*, 2016 IL 118181, ¶ 9, 50 N.E.3d 1092 (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). According to our supreme court:

> The officer must have a reasonable, articulable suspicion that criminal activity is afoot. [Citation.] Although reasonable, articulable suspicion is a less demanding standard than probable cause, an officer's suspicion must amount to more than an inchoate and unparticularized suspicion or hunch of criminal activity. [Citation.] The investigatory stop must be justified at its inception and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the governmental intrusion upon

the constitutionally protected interests of the private citizen. [Citation.] In judging the officer's conduct, we apply an objective standard and consider, would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" (Internal quotation marks omitted.) *Timmsen*, 2016 IL 118181, ¶ 9.

The standard established in *Terry* has been codified into Illinois law at section 107-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107-14 (West 2018)).

¶ 23 Although the record shows Officer Daniels acknowledged running down an alley in a high crime area is not necessarily suspicious, Officer Daniels identified the following facts which led him to suspect defendant had either just committed or was preparing to commit a crime and was trying to avoid the police: (1) defendant was very concerned with his surroundings while in the alley, (2) he was constantly changing his pace, and (3) he was also checking his surroundings by looking to his left and right several times. Based on his training and experience, Officer Daniels indicated in his report that criminals often try to conceal their movement by avoiding main thoroughfares, opting to travel through alleys and between houses, and joggers typically do not run through people's yards and constantly check their surroundings while starting and stopping their movement. According to Officer Daniels, defendant's behavior was consistent with someone trying to hide from the police after committing a crime or preparing to commit a crime.

¶ 24 According to defendant, a seizure was not justified merely because Officer Daniels thought defendant's behavior was highly suspicious because he was jogging down alleyways and "in between residences," "constantly changing his pace," and "looking to the left and right several times." Defendant also argues we should not consider what happened after

Officer Daniels lost sight of defendant in the alley because Officer Daniels planned on stopping defendant based on what he knew up to that point.

¶ 25 However, regardless of whether Officer Daniels planned to stop defendant based on what he saw in the alley, the officer obtained additional information before defendant was actually seized. Because we objectively examine the information available to the officer at the time of the seizure, Officer Daniels testimony he planned to stop defendant based only on the information available to him when defendant left the alley does not control whether defendant's seizure was unlawful.

¶ 26 After driving to where he believed defendant would be after defendant left the alley, Officer Daniels saw and recognized defendant. Officer Daniels was familiar with defendant and defendant's criminal history because he had arrested defendant numerous times and was familiar with defendant being arrested by other police officers. Most of defendant's arrests were burglary, weapon, or drug related.

¶ 27 According to Officer Daniels's written report, when defendant saw the officer, he immediately stopped running as if sight of the officer surprised him. Defendant was frozen in place for approximately one or two seconds staring directly at the officer. Defendant then looked straight ahead and continued walking east in the street. Officer Daniels then pulled his patrol vehicle to the curb near defendant and opened the driver's side door. Most significantly, before Officer Daniels said anything, defendant stopped in the middle of the street and threw his hands into the air above his head and faced the officer. According to Officer Daniels's written report, all of defendant's actions up to that point, including the fact he was running through alleys and yards, his hyper awareness, and the way he reacted when he saw Officer Daniels were very suspicious. Based on defendant's criminal history, of which Officer Daniels was aware, and his

observations of defendant during the minutes preceding defendant's seizure, Officer Daniels noted he was all but convinced defendant had either just committed, was in the process of committing, or was preparing to commit a crime. Officer Daniels only seized defendant after being aware of these articulable facts.

¶ 28 Based on the record, defendant cannot establish his trial counsel's decision not to challenge defendant's initial seizure constitutes ineffective assistance of counsel. Officer Daniels identified sufficient articulable facts for an objectively reasonable police officer to conclude criminal activity was afoot and defendant was involved. As a result, a motion to suppress would have failed.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we affirm the trial court's judgment.

¶ 31 Affirmed.