NO. 4-09-0026     Filed 6/30/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Menard County |
| NATHAN D. AHLERS, | ) | No. 08CF6 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Richard D. Greenlief, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In May 2008, defendant, Nathan D. Ahlers, pleaded guilty to aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2008)) pursuant to an open plea. After accepting defendant's guilty plea, the trial court sentenced him to four years and six months in prison pursuant to the State's recommendation.

Defendant appeals, arguing that the trial court erred by sentencing him to 4 1/2 years in prison. Specifically, defendant contends that the court erred by considering (1) defendant's mental retardation as an aggravating factor, (2) unreliable nonstatutory factors in aggravation, and (3) information from the reviewing psychiatrist's evaluation that was obtained in violation of his privilege against self-incrimination. Because defendant has forfeited review of these issues, we affirm.

## I. BACKGROUND

### A. The State's Charge and Defendant's
### Initial Psychological Evaluation

On April 4, 2008, the State charged defendant with aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2008)), alleging that defendant had knowingly touched the penis of his minor brother, N.A., for the purpose of sexual gratification. On April 10, 2008, defendant filed a motion for psychological evaluation, which the trial court granted. The results of that psychological evaluation were, in part, as follows:

"[Defendant] is an 18[-]year-old male
with significant cognitive impairment who is
currently in *** [j]ail facing charges [that
he sexually abused] his 16[-]year[-]old
brother, who also is cognitively impaired.
At the time of his arrest, [defendant] was
serving probation for sexual[ly] abus[ing]
the same sibling earlier this year [(Menard
County case No. 08-CM-3)]. He has been pre-
viously diagnosed with Attention Deficit
Disorder.

*** [Defendant's] behavior most likely
reflects [his] impulse[-]dominated personal-
ity, and his limited capacity to delay grati-
fication, rather than an intent to act out
aggressively. Placing [defendant] in a fa-
cility with hardened criminals would likely

- 2 -

result in a continuation of his victimization by others.  However, he may lack the self[-]control to resist victimizing those younger or less capable then [sic] himself."

B. Defendant's Guilty Plea and Fitness Evaluation

In May 2008, defendant pleaded guilty to the aggravated-criminal-sexual-abuse charge (720 ILCS 5/12-16(b) (West 2008)) pursuant to an open plea--that is, defendant pleaded guilty without receiving any promises from the State.  In August 2008, defendant filed a motion to withdraw his guilty plea, asserting that he (1) lacked an "understanding of the meaning and impact of his guilty plea" and (2) had cognitive-ability scores ranging from moderate to mild retardation.  Following a September 2008 hearing, the trial court found that a bona fide doubt existed as to defendant's fitness and ordered a fitness examination.

Dr. Daniel J. Cuneo, a clinical psychologist, performed the fitness examination and reported, in part, the following findings to the trial court:

"At the beginning of my interview with [defendant], I informed him of the limited confidentiality of my assessment as I would be sending a copy of my findings to *** his defense attorney[,] *** the State's Attorney[,] and *** the presiding judge.  When asked if he understood the aforementioned

information and if he wished to continue, [defendant] nodded yes.  I then asked him to repeat back in his own words what he had just agreed to do and he was able to say that I was going to send a copy of my report to other people.

* * *

It would be my opinion that [defendant's] mental illness (Adjustment Disorder with Anxious and Depressed Mood, Dysthymic Disorder, Rule Out Attention Deficit Hyperactivity Disorder, and Mild Mental Retardation) does not at the present time substantially impair his ability to understand the nature and purpose of the proceedings against him or his ability to assist in his own defense.  ***  [Defendant] could *** understand the concepts of plea bargaining and probation.  *** [E]ven though his memory is impaired, he has sufficient memory to relate these things in his own personal manner.  Therefore, it is my opinion that [defendant] is presently fit to stand trial.

At the same time, [defendant] is intellectually limited.  His thinking is very concrete and vocabulary that of a ten-year-

- 4 -

old.  I would recommend that the vocabulary
be kept simple.  I would also recommend that
periodic checks be made during the court
proceedings to make sure that [defendant]
understands what is happening.  [Defendant]
should be asked then to explain back in his
own words what is happening and not simply
answer yes or no that he comprehends.  He
does have the ability to comprehend the trial
proceedings if these concepts are broken down
into simpler terms."

In October 2008, the trial court accepted the parties' stipulation that defendant was fit in light of Cuneo's report.  Thereafter, defendant withdrew his motion to withdraw his guilty plea.

### C. Defendant's Sentencing Hearing and the Trial Court's Imposition of His Sentence

Following defendant's December 2008 sentencing hearing, at which (1) defendant's father testified on defendant's behalf, (2) the trial court called an employee from the Central Illinois Services Access Group--which is a group home that provides service and maximizes independence for the disabled--to testify about security at its facility, (3) counsel presented argument, and (4) defendant spoke on his own behalf, the court sentenced defendant to 4 1/2 years in prison, explaining as follows:

"[T]he court has considered the
presentence investigation report, has spent
[a] considerable amount of time reading

through all of the information that was provided here, the police reports, the State's Attorney's referral letter, [and] the psychological evaluation ***.

[The psychological evaluation] dated *** April 26th of this year [and] the sex offender assessment *** would indicate this is one of these difficult cases where *** [the court does not] think there is any question that the offense was committed.

The real question is his ability to be rehabilitated. Whether he has impulse control, he has psychological factors [that] would allow rehabilitation, and where that rehabilitation should take place.

[The court] read[s] from [the sex-offender assessment] that *** the conclusions drawn from the summary place him at a 26 percent chance [to reoffend], [which] is not defendant[-]specific as [the court] read[s] the report.

But, 26 percent of all offenders who are in a similar situation or the same situation *** are expected to reoffend within five years, and that in the court's mind is a substantial risk to the public and places the

public at risk wherever [defendant] is ***
housed.

[Looking] at some of the factors [from the sex-offender assessment], quite honestly, defendant, given his past behavior, his disability level, the problems that he has, he is probably not a particularly good candidate for rehabilitation. That in itself would tend to argue that in fact placement for [defendant] should be the Department of Corrections [(DOC)].

On the plus side, [defendant], I see a number of people in the front row here, and [defendant's] father has testified, and [the court has] no doubt that there is a strong support system here for *** defendant should [h]e choose to avail himself of the counseling.

It would seem to the court that it would be extremely inappropriate to sentence [defendant] to a situation where he would have in any way contact with his sibling. [The court does] note that *** [defendant's] grandparents have volunteered during the interim period to house him.

[The court] assume[s] from that ***

offer that, in fact, they would be willing to comply with any order which the court would have, as far as [defendant having] no contact with either sibling *** and a strong monitor of his actions.

* * *

[Defendant], as [the court] weigh[s] things in [its] own mind here, and the record does not reflect this, but [the court] is doing that.  There are some lengthy pauses between the things that [the court has] said here.  *** [The court has] to weigh [its] own [assessment of the] potential that you are going to reoffend, and [it] see[s] that it is a large potential.  *** [The court does not] know what will happen.

This is not specific to you.  Yet, in the same respect, what [the court has to] go by is *** the evaluation of the professionals and go by the history that you have, and that would seem to show that there is a longstand-ing series of events[.]  [I]n particular, one where there was a probation at the beginning of this year, and *** the new offense oc-curred or was charged roughly three weeks after you were placed on probation for essen-

- 8 -

tially the same thing, a misdemeanor version earlier this year.

It would seem to [the court] that, quite frankly, one of *** the things that you lack here is impulse control. [The court is] confident that what you tell [the court] *** is what you believe today, and that is that you will not reoffend, but what [the court] also ha[s] to take into consideration is how to protect the public. ***

Yet, in the same respect, [the court is] going to be placing you into a home, if [the court] follow[s] what your attorney has suggested, placing you into a home where there are people just as deserving of protection, and by placing you in that home, there will be skilled service providers there.

Yet, in the same respect, what little experience [the court] has had with others in a similar situation that is not a great deal of protection to the others that are there.

Bottom line is this, [defendant], as much as [the court] would like to see you get the help, [it] do[es not] think that the risk that is there to the public is one where [the court] can justify that by going along with

*** sentencing you to probation.

[The court] believe[s] that the only appropriate sentence is a sentence to [DOC]. [The court] will follow the recommendation of the State. That will be for a period of four and a half years. There will be a two-year mandatory supervised release."

D. Defendant's Motion To Reconsider Sentence
 and the Trial Court's Ruling on That Motion

Shortly after defendant's December 2008 sentencing hearing, defendant filed a motion to reconsider sentence. In support of his motion, defendant claimed that (1) his sentence was not imposed "according to the seriousness of the offense and with the objective of restoring [defendant] to useful citizenship"; (2) the trial court failed to consider as mitigating factors (a) the fact that defendant was "particularly likely to comply with the terms of probation" and (b) defendant's mental retardation; and (3) defendant's sentence was not in keeping with (a) "[his] past history or criminality, mental history and capacity, and family situation" and (b) the "alternatives available to the [c]ourt to assist *** [d]efendant in his rehabilitation." Following a January 2009 hearing, the court denied defendant's motion to reconsider sentence.

This appeal followed.

II. DEFENDANT'S CLAIM THAT THE TRIAL COURT ERRED BY
IMPOSING A 4 1/2-YEAR PRISON SENTENCE

Defendant argues that the trial court erred by imposing

a 4 1/2-year prison sentence.  Specifically, defendant contends that the court erred by considering (1) his mental retardation as an aggravating factor, (2) unreliable nonstatutory factors in aggravation, and (3) information from the reviewing psychiatrist's evaluation that was obtained in violation of his privilege against self-incrimination.  We conclude that defendant has forfeited review of these contentions.

A. Forfeiture Under Section 5-8-1(c)
of the Unified Code of Corrections

In People v. Reed, 177 Ill. 2d 389, 394, 686 N.E.2d 584, 586 (1997), the supreme court first explained that section 5-8-1(c) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-1(c) (West 1994)) requires a written postsentencing motion to "allow the trial court the opportunity to review a defendant's contention of sentencing error and save the delay and expense inherent in appeal if they are meritorious."  In People v. Montgomery, 373 Ill. App. 3d 1104, 1123, 872 N.E.2d 403, 419 (2007), this court, citing its decision in People v. Rathbone, 345 Ill. App. 3d 305, 802 N.E.2d 333 (2003), reiterated that section 5-8-1(c) of the Unified Code (730 ILCS 5/5-8-1(c) (West 2004)) mandates that a defendant's challenge to any aspect of his sentence be made by a written motion filed within 30 days of the imposition of his sentence.  Following the supreme court's holding in Reed, we concluded in Rathbone that strict enforcement of section 5-8-1(c) is necessary to allow the trial court to review the precise claim of error so that it can either (1) correct its mistake or (2) explain its reasons for imposing the

- 11 -

sentence it did.  Specifically, we noted as follows:

> "[The] defendant's claim is precisely the
> type of claim the forfeiture rule is
> intended to bar from review when not first
> considered by the trial court.  Had [the]
> defendant raised th[e] issue in the trial
> court, that court could have answered the
> claim by either (1) acknowledging its mis-
> take and correcting the sentence, or (2)
> explaining that the court did not improperly
> sentence [the] defendant ***.  If the court
> did not change the sentence, then a record
> would have been made on the matter ***,
> avoiding the need for [the reviewing] court
> to speculate as to the basis for the trial
> court's sentence."  Rathbone, 345 Ill. App.
> 3d at 310, 802 N.E.2d at 337.

The rationale from Rathbone--as it was in Montgomery--
applies equally to this case.  Here, defendant failed to raise
the claims in his motion to reconsider sentence that he now
posits on appeal.  Specifically, defendant claimed that the trial
court should reconsider the sentence it imposed because (1) his
sentence was not imposed "according to the seriousness of the
offense and with the objective of restoring [defendant] to useful
citizenship"; (2) it failed to consider (a) the fact that defen-
dant was "particularly likely to comply with the terms of proba-

- 12 -

tion" and (b) defendant's mental retardation as <u>mitigating</u> factors; and (3) defendant's sentence was not in keeping with (a) "[his] past history or criminality, mental history and capacity, and family situation" and (b) the "alternatives available to the [c]ourt to assist *** [d]efendant in his rehabilitation." These are not the claims he now posits on appeal, which are that the trial court improperly considered (1) his mental retardation as an aggravating factor, (2) unreliable nonstatutory factors in aggravation, and (3) information from the reviewing psychiatrist's evaluation that was obtained in violation of his privilege against self-incrimination. Accordingly, defendant has forfeited these arguments pursuant to section 5-8-1(c) of the Unified Code.

We further conclude that Supreme Court Rule 604(d) (210 Ill. 2d R. 604(d)) offers a second, and independent, reason to consider defendant's arguments forfeited.

B. Forfeiture Under Supreme Court Rule 604(d)

Supreme Court Rule 604(d), which governs appeals from judgments entered upon guilty pleas, provides, in pertinent part, that "any issue not raised by the defendant in the motion to reconsider the sentence *** shall be deemed [forfeited]." 210 Ill. 2d R. 604(d).

In <u>People v. Williams</u>, 299 Ill. App. 3d 791, 795, 701 N.E.2d 1186, 1189 (1998), this court noted the supreme court's rationale for enacting Rule 604(d) as follows:

"Rule 604(d) is the supreme court's direct

response to the large number of appeals in the early 1970s that flooded the appellate court. People v. Evans, 174 Ill. 2d 320, 329, 673 N.E.2d 244, 248 (1996). By promulgating this rule, the supreme court simply notified defendants that if they really claim to be aggrieved by some deficiency in the trial court proceedings during which they pleaded guilty, then they must first call the alleged deficiency to the trial court's attention, where relief could be granted. Otherwise, permitting such defendants to appeal would result *** in an unjustified waste of scarce judicial resources."

Here, defendant pleaded guilty pursuant to an open plea, rendering Rule 604(d) applicable. Because, as previously discussed, defendant failed to raise the arguments in his motion to reconsider sentence that he now posits on appeal, we conclude that defendant has forfeited his claims under Rule 604(d) as well.

### C. The Plain-Error Doctrine and This Case

Despite having forfeited his claims on multiple grounds, defendant contends that his procedural default may be excused by the plain-error doctrine of Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). We disagree.

Supreme Court Rule 615(a) provides as follows:

- 14 -

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).

In People v. Bannister, 232 Ill. 2d 52, 65, 902 N.E.2d 571, 580 (2008), the supreme court provided the following guidance concerning the circumstances in which the plain-error doctrine applies:

"The doctrine serves as '"a narrow and limited exception to the general [rule of procedural default]."' People v. Szabo, 113 Ill. 2d 83, 94[, 497 N.E.2d 995, 999] (1986), quoting People v. Pastorino, 91 Ill. 2d 178, 188[, 435 N.E.2d 1144, 1149] (1982). This court will review unpreserved error when a clear and obvious error occurs and: (1) the evidence is closely balanced; or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. People v. Piatkowski, 225 Ill. 2d 551, 565[, 870 N.E.2d 403, 410-11] (2007); People v. Hall, 194 Ill. 2d 305, 335[, 743 N.E.2d 521,

539] (2000)."

"'Under both prongs of the plain-error doctrine, the burden of persuasion remains with defendant.'" People v. Wishard, 396 Ill. App. 3d 283, 286, 919 N.E.2d 1118, 1120 (2009), quoting People v. Walker, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). "When a defendant fails to establish plain error, the result is that the 'procedural default must be honored.'" Bannister, 232 Ill. 2d at 65, 902 N.E.2d at 580-81, quoting People v. Keene, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995).

Defendant relies on the Second District's decision in People v. McCain, 248 Ill. App. 3d 844, 850, 617 N.E.2d 1294, 1299 (1993), for the proposition that the plain-error doctrine applies to this case because his challenges to his sentence "affect[] [his] fundamental right to liberty." However, the plain-error doctrine is not a general savings clause, to be used as a means by which to preserve all errors affecting substantial rights that have not been brought to the trial court's attention. People v. Herron, 215 Ill. 2d 167, 177, 830 N.E.2d 467, 474 (2005). And we note that defendant's contention here is essentially the same contention this court rejected in Rathbone. Rathbone, 345 Ill. App. 3d at 311, 802 N.E.2d at 338 (holding that it is not sufficient to "simply state that because sentencing affects the defendant's fundamental right to liberty, any error committed at that stage is reviewable as plain error"). Nonetheless, as previously stated, sentencing errors raised for the first time on appeal are reviewable as plain error if (1) the

- 16 -

evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing.  Rathbone, 345 Ill. App. 3d at 312, 802 N.E.2d at 339.

In this case, defendant does not specifically assert that (1) the evidence at the sentencing hearing was closely balanced or (2) any of the alleged errors deprived him of a fair sentencing hearing.  However, defendant does contend that the trial court committed error when it considered certain improper information in aggravation.  Thus, although defendant never specifically asserts as much, for purposes of plain-error review, he appears to be challenging the fairness of his sentencing hearing.  Assuming arguendo that the trial court erred by considering improper information in aggravation, we conclude that defendant's sentencing hearing was not fundamentally unfair.  Therefore, we do not deem defendant's claims sufficient to warrant plain-error review.

In so concluding, we note that the crime defendant pleaded guilty to carried a minimum sentence of three years and a maximum sentence of seven years in prison (see 720 ILCS 5/12-16(g) (West 2008) (designating aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2008)) a Class 2 felony)).  Thus, defendant's 4 1/2-year prison sentence was a mid-range sentence.  The record shows that the State recommended the 4 1/2-year sentence after explaining how it had carefully considered the circumstances in this case.  Indeed, the State (1) did not pursue a violation-of-probation charge against defendant and (2) recom-

mended the mid-range sentence after balancing the fact that defendant (a) had recently committed the same crime against the same victim and (b) was dealing with a cognitive disability. Moreover, the record from the sentencing hearing also shows that the trial court painstakingly considered all the factors related to (1) defendant's condition, (2) the nature of the offense, and (3) sentencing alternatives before imposing the sentence recommended by State. Accordingly, we do not view any alleged errors in defendant's sentencing hearing as having jeopardized the integrity or reputation of the judicial process.

In closing, we also note that defendant asserts as a last resort that we should view his trial counsel's failure to preserve these issues as ineffective assistance of counsel. For the reasons that this court has outlined in People v. Durgan, 346 Ill. App. 3d 1121, 806 N.E.2d 1233 (2004), we decline to address this claim. In so doing, we invite defendant to pursue his ineffective-assistance-of-trial-counsel claims under the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-8 (West 2008)), where a complete record can be made regarding the circumstances of his counsel's alleged ineffectiveness.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment as costs of this appeal.

Affirmed.

MYERSCOUGH, P.J., and McCULLOUGH, J., concur.