**NOTICE**
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180071-U

NO. 4-18-0071

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 10, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| MARCUS A. GILLIAM, | ) | No. 17CF90 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1 *Held:* The appellate court affirmed the trial court's judgment because defendant's motion to suppress was properly denied, defendant had a fair trial, and defendant was properly sentenced.

¶ 2 In September 2017, a grand jury charged defendant, Marcus A. Gilliam, with unlawful possession with intent to deliver a controlled substance. 720 ILCS 570/401(c)(1) (West 2016). The charge alleged he possessed and intended to deliver between 1 and 15 grams of heroin.

¶ 3 In October 2017, defendant filed a motion to suppress evidence, arguing (1) that the police lacked legal justification for stopping the vehicle in which defendant was a passenger and (2) evidence obtained as a result of the stop should be suppressed as the fruit of the poisonous tree. In November 2017, the trial court conducted a hearing on that motion and denied it.

¶ 4 At defendant's December 2017 jury trial, several witnesses testified, including Peoria Multi-County Narcotics Enforcement Group (P-MEG) Officer Patrick Patterson, who

testified as an expert in the area of street-level narcotics sales in Peoria County. Patterson opined that defendant had an amount of heroin consistent with a dealer rather than simply a user. Ultimately, the jury found defendant guilty of possession of a controlled substance with intent to deliver.

¶ 5    In January 2017, the trial court conducted a sentencing hearing and sentenced defendant to 12 years in prison.

¶ 6    Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress, (2) defendant was denied a fair trial because of Patterson's improper expert testimony, (3) defendant was erroneously sentenced because the trial court (a) improperly considered in aggravation the fact that he received compensation for selling drugs and (b) failed to consider any factor in mitigation, and (4) defendant's 12-year sentence was excessive in light of defendant's mitigating evidence. We disagree and affirm.

¶ 7                               I. BACKGROUND

¶ 8    In September 2017, a grand jury charged defendant with unlawful possession with intent to deliver a controlled substance. *Id.* The charge alleged he possessed and intended to deliver between 1 and 15 grams of heroin.

¶ 9                       A. Defendant's Motion to Suppress

¶ 10    In October 2017, defendant filed a motion to suppress evidence, arguing that (1) the police lacked legal justification for stopping the vehicle in which defendant was a passenger and (2) evidence obtained as a result of the stop should be suppressed as the fruit of the poisonous tree. In November 2017, the trial court conducted a hearing on that motion.

¶ 11                               1. *Patrick Patterson*

¶ 12    At that hearing, Patrick Patterson, an officer working with P-MEG, testified that he

worked with an informant, Mary McCormick, who told Patterson that she had previously taken defendant to Chicago to buy heroin. Patterson knew defendant because he had previously arrested defendant in June 2017 for possession of heroin and cocaine.

¶ 13    Patterson testified that he asked McCormick if she would allow him to place a global positioning system (GPS) device on her boyfriend's vehicle, a red Chevrolet Impala. McCormick agreed, and Patterson put the GPS on the vehicle, which he used to track it from Peoria to Chicago on August 25, 2017, and back on August 26, 2017. McCormick, defendant, and Travis Kinnard, defendant's cousin, were in the vehicle. During this trip, McCormick sent Patterson text messages providing updates about their location. She told Patterson that someone in the vehicle had 10 grams of heroin in his right front pocket.

¶ 14    Patterson testified that on August 26, 2017, when the car drove to Woodford County, he informed Deputy Nathan Campbell that one of the occupants would have 10 grams of heroin in his pocket and gave him the vehicle's license plate number.

¶ 15                    2. *Jesse Polston*

¶ 16    Jesse Polston testified that he was a deputy with the Woodford County Sheriff's Office and that Campbell informed him there would be a red Chevrolet Impala traveling through Woodford County with an unknown amount of narcotics in the vehicle.

¶ 17    Polston testified that he saw the vehicle Campbell had described pass him, and Campbell told Polston over the radio that they had probable cause due to the vehicle's speed to pull it over. Polston then initiated a traffic stop on the vehicle and noted that McCormick was the driver, defendant was the front-seat passenger, and Kinnard was the back-seat passenger.

¶ 18    Polston asked the occupants for their identification and ordered McCormick out of the vehicle. All the occupants were ultimately taken into custody, and officers found two bags of

heroin in the vehicle.

¶ 19                                 3. *Nathan Campbell*

¶ 20            Nathan Campbell testified that he was a deputy with the Woodford County Sheriff's Office and that P-MEG had alerted him to wait for a car that was coming through Woodford County with narcotics. Campbell was told that (1) P-MEG was working with someone in the vehicle who was taking a suspect to Chicago to pick up narcotics, (2) on the return trip, they would go through Woodford County, and (3) P-MEG had set up a GPS tracker on the vehicle. Campbell monitored the GPS via an application on his phone.

¶ 21            Campbell monitored the GPS and observed the vehicle when it was in the Chicago area. He observed that the vehicle "sat still for quite awhile," and he learned they were waiting at a gas station trying to find the source for the drugs. Campbell saw that they stopped in Chicago for about an hour before seeing them return to Woodford County.

¶ 22            Campbell testified that "one of the reasons" he stopped the vehicle was because he observed it speeding on the GPS. He explained that he also stopped the vehicle because (1) he was told the vehicle was transporting narcotics and (2) the license plate of the vehicle showed the registered owner had a revoked driver's license. After the stop, Campbell removed the GPS from the vehicle and returned it to P-MEG.

¶ 23                                 4. *Defendant's Testimony*

¶ 24            Defendant testified that he was familiar with the red Chevrolet Impala because it belonged to McCormick's boyfriend, Robert Taylor. Defendant testified that McCormick sometimes rented the vehicle to people. Defendant explained that the only time he used the vehicle, he had to get permission from Taylor, but he paid McCormick $100 as a rental fee.

¶ 25                                 5. *The Trial Court's Ruling*

¶ 26    In coming to its conclusion, the trial court stated that McCormick's statements to the police that she was taking defendant to and from Chicago to purchase heroin were verified by the GPS, and the court noted that "in assessing and determining probable cause, police officers are entitled to rely upon information from third parties." The court also noted that "an eyewitness is entitled to particularly great weight in determining probable cause" and that McCormick was an eyewitness.

¶ 27    The court further decided probable cause was supported by her text message that said, in part, "He got 10 gram. It's in his pocket." The court also noted that the credibility of her statements was entitled to weight because (1) she was a known informant who could face penalties, like charges of obstructing justice if she lied to the police and (2) she was making concrete statements of fact which are "entitled to more weight than information that consists of conclusory allegations." The court concluded that based upon all of this, the police had probable cause to stop the vehicle.

¶ 28    The trial court further determined that based upon her use of the vehicle and her participating in transactions renting the vehicle out, McCormick had authority to consent to the placement of the GPS on the vehicle during the trip to Chicago. The court concluded that "[t]he defendant has a reasonable expectation of privacy to ride in that car under the conditions that Ms. McCormick would establish as the person with apparent authority over the car."

¶ 29    The trial court further noted that it was not basing its finding of probable cause on the speed of the vehicle as measured by the GPS because it did not think that the evidence established that the GPS was accurate for speed.

¶ 30    The trial court ruled that the police had probable cause to stop the vehicle; accordingly, the court denied defendant's motion to suppress.

¶ 31                                    B. The Trial

¶ 32          At defendant's December 2017 jury trial, several witnesses testified, including Patterson, who testified as an expert in the area of street-level narcotics sales in Peoria County. Defendant did not object to Patterson's testifying as an expert. Patterson described to the jury the characteristics and habits of heroin users and dealers. He explained that heroin users often purchase less than 0.5 grams at a time and use that amount quickly, while dealers often buy a large amount at a time and use a "cutting agent" to increase the quantity before packaging the heroin in plastic bags or aluminum foil for sale. Patterson also explained that dealers often carry large amounts of cash. (At trial, both Polston and defendant testified that defendant had approximately $2800 in cash on his person at the time of his arrest.)

¶ 33          Patterson opined that the amount of heroin defendant had—namely, one bag of 4.8 grams and one bag of 4.9 grams—was consistent with a dealer rather than simply a user. He also opined that the $2800 in cash recovered from defendant was consistent with his being a dealer. Patterson explained that drugs do not have to be in numerous plastic bags for someone to be a dealer because dealers who go to Chicago to get drugs usually receive them in one bag.

¶ 34          On cross-examination, Patterson acknowledged that whether a person has a scale is part of the analysis of whether that person is a dealer, and he did not know if a scale was found with defendant. Patterson further testified that 10 grams of heroin would provide a user with approximately a five-day supply. On redirect examination, Patterson stated he had never seen someone who was just a user in Peoria County or Woodford County with 4.8 grams, 4.9 grams, or 9.7 grams of heroin.

¶ 35          Because none of defendant's contentions involve what took place at trial, other than Patterson's expert testimony, we need not discuss the remainder of the evidence presented at trial.

Ultimately, the jury found defendant guilty of possession of a controlled substance with intent to deliver.

¶ 36                                    C. The Sentencing Hearing

¶ 37        At defendant's January 2017 sentencing, defendant presented two letters to the court. The State called Patterson as a witness, and he testified that in June 2017, he arrested defendant for (1) possession with intent to deliver cocaine and (2) possession with intent to deliver heroin. That case was still pending in Peoria County. Patterson further testified that the heroin recovered from defendant during his August 2017 stop was valued at approximately $2100.

¶ 38        Defendant decided not "to present any evidence formally" and to only make a statement of allocution. In his statement, defendant told the trial court that he was not a drug dealer but instead a drug user. Defendant further told the court about his family life and hardships and asked for leniency.

¶ 39        The State, in its sentencing recommendation, argued that because (1) heroin is an addictive and deadly drug, (2) defendant committed the current offense while out on bond, and (3) defendant had a prior controlled substance conviction, the trial court should sentence defendant to 12 years in prison.

¶ 40        Defendant argued that his sentence should be on "the lower range of the requirement 4 to 15" because (1) the trial court should not consider the Peoria case in sentencing him, given that no decision had been made in that case and (2) his prior drug offense was 17 years earlier.

¶ 41        The trial court stated that it considered (1) the evidence from the trial, (2) the presentence investigation report, (3) the addendum to that report that included defendant's letters, and (4) the evidence and information provided at the sentencing hearing, which included

defendant's own statement. The court stated that it "does not find any factors in mitigation."

¶ 42    The trial court found in aggravation that (1) defendant's conduct threatened serious harm, (2) defendant had a prior criminal history, (3) the sentence needed to deter others, and (4) defendant received compensation for committing the offense. The court also noted that defendant violated his bond when he committed the offense for which he was then being sentenced. The court noted the harm that heroin can cause, stating, "There are plenty of parents in Central Illinois that grieve the loss of their children because of overdoses of heroin." The court stated that defendant was so committed to being a drug dealer that "despite being on bond, he continued to conduct himself in regard to this behavior. He continued to participate in it. That's despicable." The trial court sentenced defendant to 12 years in prison.

¶ 43    This appeal followed.

¶ 44                II. ANALYSIS

¶ 45    Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress, (2) defendant was denied a fair trial because of Patterson's improper expert testimony, (3) defendant was erroneously sentenced because the trial court (a) improperly considered in aggravation the fact that he received compensation for selling drugs and (b) failed to consider any factor in mitigation, and (4) defendant's 12 year sentence was excessive in light of defendant's mitigating evidence. We disagree and affirm.

¶ 46                A. The Motion to Suppress

¶ 47                1. *The Law*

¶ 48    In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court recognized a limited exception to the traditional probable cause requirement whereby a police officer may briefly detain a person for investigatory purposes based upon reasonable and articulable suspicion that he has

committed, or is about to commit, a crime. See *People v. Dunmire*, 2019 IL App (4th) 190316, ¶ 72; *Brendlin v. California*, 551 U.S. 249, 256-57 (2007).

¶ 49    A *Terry* stop is justified at its inception if the police officer can point to specific and articulable facts that, taken together with rational inferences, warrant a stop. *Dunmire*, 2019 IL App (4th) 190316, ¶ 72. Such facts are assessed based upon the totality of the circumstances and are judged based upon the information known to the officer at the time. *Id.* ¶ 73.

¶ 50    "In evaluating whether a stop is warranted, a court should consider the quality and content of information known to officers as well as the reliability of the source of the information." (Internal quotation marks omitted.) *People v. Allen*, 409 Ill. App. 3d 1058, 1070, 950 N.E.2d 1164, 1177 (2011). Courts have identified the following factors and indicia of reliability: (1) the informant implicates himself in the crime, (2) the informant's identity is known to the police, (3) the informant would later be available for cross-examination by the defendant, (4) the informant would be subject to criminal liability if it was determined they were lying, and (5) the information given is predictive, observable, and able to be confirmed by the police. *Id.* at 1071-72; *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 30.

¶ 51    The preceding list is not exhaustive.

¶ 52                    2. *This Case*

¶ 53    In this case, the trial court concluded that because McCormick, the informant, (1) was an eyewitness, (2) gave information that was verified by the GPS about taking defendant to and from Chicago, and (3) was a known informant, the police had justification to stop the vehicle.

¶ 54    We agree with the trial court. McCormick was not some unknown confidential informant. She was an eyewitness who personally observed a crime and reported the details of that

crime to the police. She was known to everyone and risked substantial penalties if she lied. The police could verify key information she gave through the GPS.

¶ 55        Defendant asserts that the fact that McCormick had a pending retail theft charge for which she was hoping to receive favorable treatment somehow diminishes her credibility. We conclude the opposite. Her case was ultimately dismissed following her being an informant. It does not take an extraordinary imagination to conclude that if she had lied to the police about someone in the vehicle having heroin, the chances of her case being dismissed would plummet. She did not have a motive to lie but instead had a strong motive to provide real, verifiable information.

¶ 56        For all these reasons, the trial court did not err by denying the motion to suppress.

¶ 57                    B. Patterson's Expert Testimony

¶ 58        Defendant next asserts that Patterson's expert testimony was improper because it involved improper "profile" testimony. The State responds that this testimony was proper. We agree with the State.

¶ 59        Evidence is relevant if it tends to make a fact of consequence in the case more or less likely to be true. Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant evidence should be excluded if it is substantially more prejudicial than it is probative. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 60        As an initial matter, we note that defendant raises no challenge to the fact that Patterson was an expert. Instead, defendant argues, pursuant to *People v. Brown*, 232 Ill. App. 3d 885, 598 N.E.2d 948 (1992), that Patterson's "profile" testimony should have been excluded because it was prejudicial.

¶ 61        The State correctly points out that in *Brown*, the "profile" testimony was excluded because, although the officer's expert testimony was offered to establish the street value of the controlled substance, the testimony went far beyond the value of the substances. *Id.* at 898. *Brown*

did not categorically conclude that all testimony which may be construed as "profile" testimony is inadmissible.

¶ 62    We previously rejected the same argument in *People v. Reatherford*, 345 Ill. App. 3d 327, 343, 802 N.E.2d 340, 354 (2003), in which we concluded that because the expert's testimony did not stray beyond those subjects on which he was qualified to testify, that testimony was permissible. In *Reatherford*, the expert officer opined that the amount of pseudoephedrine in the defendant's possession was a factor in coming to his conclusion that the defendant intended to manufacture methamphetamine. The expert officer explained that the amount was " 'far and above what your normal consumer or normal person would have in their possession.' " *Id.* at 333. We concluded that the testimony in *Reatherford* "focused on the facts presented in the case and did not amount to inadmissible profile testimony." *Id.* at 343.

¶ 63    Just as in *Reatherford*, in which the expert was permitted to explain what quantities of a substance are associated with manufacturing as opposed to personal use, we conclude that Patterson was properly permitted to explain what quantities of heroin are associated with dealing as opposed to personal use. We further conclude, as we did in *Reatherford,* that *Brown* is distinguishable from the case at hand. Accordingly, the trial court did not err by allowing this expert testimony.

¶ 64    C. Consideration of Aggravating and Mitigating Factors

¶ 65    Defendant next asserts that this case should be remanded for a new sentencing hearing because the trial court (1) improperly considered the fact that defendant received compensation for selling drugs as a factor in aggravation and (2) failed to consider any factor in mitigation. We disagree.

¶ 66    1. *The Forfeiture Rule as It Applies to Sentencing Issues*

¶ 67	The Unified Code of Corrections (Unified Code) states, in pertinent part, "A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence." 730 ILCS 5/5-4.5-50(d) (West 2016).

¶ 68	In *People v. Reed*, 177 Ill. 2d 389, 394, 686 N.E.2d 584, 586 (1997), the Illinois Supreme Court explained the rationale behind the statute as follows:

> "Requiring a written post-sentencing motion will allow the trial court the opportunity to review a defendant's contention of sentencing error and save the delay and expense inherent in appeal if they are meritorious. Such a motion also focuses the attention of the trial court upon a defendant's alleged errors and gives the appellate court the benefit of the trial court's reasoned judgment on those issues."

¶ 69	Following *Reed*, this court addressed the forfeiture rule under section 5-8-1(c) of the Unified Code (730 ILCS 5/5-8-1(c) (West 2002)) in *People v. Rathbone*, 345 Ill. App. 3d 305, 802 N.E.2d 333 (2003), and in cases following *Rathbone*: *People v. Montgomery*, 373 Ill. App. 3d 1104, 1123, 872 N.E.2d 403, 419 (2007); *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256; *People v. Hanson*, 2014 IL App (4th) 130330, ¶ 21, 25 N.E.3d 1.

¶ 70	We mention the above cases because the State is correct that defendant has forfeited these issues because he failed to file a written postsentencing motion raising them in the trial court. Nonetheless, we choose to address defendant's claims on their merits and conclude they have none.

¶ 71	2. *The Trial Court's Alleged Improper Consideration of Compensation*

¶ 72	Defendant first claims that the trial court should not have considered in aggravation the fact that defendant received compensation for selling drugs. The court's statement at issue is,

"Based on the testimony of Officer Patterson, the court would further find that it appears that the defendant received compensation for committing the offense, that being the selling of drugs, and that Officer Patterson testified that he has been involved as an officer in the process of making controlled buys from the defendant." The State and defendant both agree that consideration of compensation for selling drugs as an aggravating factor is improper.

¶ 73    A defendant "must show more than the mere mentioning of an improper fact" to obtain remand for resentencing. *People v. Reed*, 376 Ill. App. 3d 121, 128, 875 N.E.2d 167, 174 (2007). If it can be determined from the record that the weight placed on an improperly considered factor was so insignificant that it did not lead to a greater sentence, then remand is not required. *People v. Maggio*, 2017 IL App (4th) 150287, ¶ 50, 80 N.E.3d 72.

¶ 74    In this case, the trial court put a great deal of emphasis on the fact that (1) defendant was on bond for a similar charge in Peoria County at the time that he committed the offense in this case, (2) the State had presented evidence of controlled buys that substantiate that charge, and (3) dealing heroin threatens great harm to the community. Those factors were central to the court's decision. We note that the court mentioned the compensation defendant received only in passing regarding the greater context of the controlled buys. In relation to the threat of harm factor, the court said, "There are plenty of parents in Central Illinois that grieve the loss of their children because of overdoses of heroin. The defendant is responsible for the placement of that poison upon our society." In relation to the fact that defendant committed this offense while on bond for a similar offense, the court said he "was so dedicated to that criminal behavior that, despite being arrested for *** such serious offenses, despite being on bond, *** He continued to participate in it. That's despicable."

¶ 75    We conclude that given the trial court mentioned the compensation only in passing,

defendant was not deprived of a fair sentencing hearing. In accordance with *Maggio*, we conclude that the weight the court placed on this arguably improper factor was so insignificant that it did not lead to a greater sentence. Accordingly, remand for a new sentencing is not required.

¶ 76    3. *The Trial Court's Alleged Failure to Consider Evidence in Mitigation*

¶ 77    Defendant claims that the trial court failed to consider statutory factors in mitigation. Sentencing courts are presumed to consider evidence in mitigation. *People v. Burton*, 2015 IL App (1st) 131600, ¶ 38, 38 N.E.3d 182. To establish that the court failed to consider evidence in mitigation, a defendant must rebut this presumption by making "an affirmative showing that the sentencing court did not consider the relevant factors." *Id.*

¶ 78    Defendant claims that the trial court failed to properly consider the presentence investigation report, three character letters, the evidence presented at the hearing, the attorneys' arguments, and defendant's statement in allocution. Defendant argues that information raised two statutory mitigating factors the trial court should have considered. In particular, defendant argues the court should have considered (1) defendant's conduct was the result of circumstances that were unlikely to recur and (2) that his imprisonment would entail excessive hardship to his nine dependent children and stepchildren. 730 ILCS 5/5-5-3.1(a)(8), (11) (West 2016).

¶ 79    At sentencing the trial court stated that it considered (1) the evidence received at trial, (2) the presentence investigation report, (3) the addendum to the presentence investigation report, (4) defendant's letters, (5) the "evidence and information" from the sentencing hearing, (6) defendant's statement, and (7) the arguments. The court found no factors in mitigation.

¶ 80    Defendant argues that the conduct was the result of circumstances that were unlikely to recur because defendant committed the offense due to addiction and those circumstances would be unlikely to recur if he got treatment. Drug addiction is not a *per se*

- 14 -

mitigating factor, in fact it can be an aggravating factor in the discretion of the trial court. *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37, 99 N.E.3d 571. The court could have easily decided that defendant was a drug addict and his criminality would cease once he is rehabilitated, but the court could have just as easily concluded that his addiction makes him *more* likely to commit crimes in the future.

¶ 81    Defendant also argues that the trial court did not consider hardship to defendant's family, particularly his dependent children. Defendant's children appear to not live with him but instead with their respective mothers in Mississippi. At the time of sentencing, defendant was unemployed. We note that one of the letters submitted to the court details that defendant's stepdaughter considers defendant a father figure and loves him greatly.

¶ 82    However, defendant alleges the trial court erred by not considering a factor which is not just for any family member, but for "excessive hardship to dependents." 730 ILCS 5/5-5-3.1(a)(11) (West 2016). The ages of defendant's biological children are contained in the presentence report, but not the ages of his stepchildren. The letter from his stepdaughter does not contain her age, and although she describes in a moving way the strong father-daughter relationship they share, she does not describe anything that suggests that he provides for her. In other words, there is nothing in the record to suggest that she is his dependent. Therefore, we cannot conclude that the trial court erred in determining that this factor did not apply.

¶ 83                    D. Defendant's 12-Year Sentence

¶ 84    Last, defendant argues that his 12-year sentence is excessive because the trial court failed to consider defendant's (1) criminal history, (2) employment history, (3) strong family ties, and (4) struggles with drug addiction.

¶ 85                         1. *The Law*

¶ 86        A trial court has great discretion in determining a sentence within the statutory guidelines, and a court of review will not disturb that decision unless the trial court abused its discretion. *People v. Evans*, 2018 IL App (4th) 160686, ¶ 36, 127 N.E.3d 695. The trial court is in the best position to weight the evidence and assess the credibility of the witnesses. *People v. Haley*, 2011 IL App (1st) 093585, ¶ 63, 960 N.E.2d 670. The Illinois Supreme Court has instructed that when "considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). Rather, "[a] sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 87                                    2. *This Case*

¶ 88        Here, defendant had been previously convicted of unlawful possession of a controlled substance and had been sentenced to two years in prison. The trial court strongly emphasized at sentencing that it considered it particularly bad that defendant was out on bond for possession of a controlled substance with intent to deliver at the time he committed the offense at issue in this case.

¶ 89        All the mitigating information that defendant describes on appeal was considered by the trial court. The court stated that it considered the presentence investigation report which stated defendant's criminal history, employment history, and information about his family and struggles with drug addiction. The court also considered the letters written by defendant's family and prior employer. We also note that when the court was composing the sentencing order, the court granted defendant's request over the State's objection to "check the box about finding that

the crime had been committed as a result of drugs and his addiction \*\*\* so that he can, hopefully, get treatment in prison."

¶ 90　　　At the hearing on defendant's motion to reconsider sentence, the court reiterated that (1) there was evidence introduced regarding the pending case, which the court considered "persuasive" and (2) "defendant was out on bond at the time that he committed this offense." We will not substitute our judgment for that of the trial court, and we conclude that the trial court did not abuse its discretion by imposing defendant's sentence.

¶ 91　　　　　　　　　　　III. CONCLUSION

¶ 92　　　For the reasons stated, we affirm the circuit court's judgment.

¶ 93　　　Affirmed.