NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241336-U

NO. 4-24-1336

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 1, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Menard County |
| MATTHEW J. COX, | ) | No. 23CF6 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Atterberry, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Defendant forfeited his contention the trial court's resentence was a punishment for his actions on probation.

¶ 2   In November 2023, defendant, Matthew J. Cox, pleaded guilty to stalking, a Class 4 felony (720 ILCS 5/12-7.3(a)(2), (b) (West 2022)). Pursuant to a negotiated plea agreement, the trial court sentenced him to 12 months' probation and 84 days in jail. In February 2024, the State filed a petition to revoke defendant's probation based on three probation violations. In April and July 2024, the State filed amended petitions to revoke defendant's probation, alleging five violations of his probation terms. In August 2024, defendant admitted committing one of the violations in exchange for dismissal of the other alleged violations. Following an October 2024 hearing, the court resentenced defendant to 24 months' imprisonment and a 4-year term of mandatory supervised release (MSR).

¶ 3   Defendant appeals, arguing the trial court abused its discretion when it sentenced

him for the probation violation instead of the offense for which he was convicted. We affirm.

¶ 4                                     I. BACKGROUND

¶ 5          In March 2023, the State charged defendant with two counts of stalking (*id.* § 12-7.3(a)(1), (2)) (counts I and II) and one count of disorderly conduct (*id.* § 26-1(a)(1)) (count III). At a November 2023 hearing, defendant pleaded guilty to count II. In exchange, the State agreed to the dismissal of the remaining charges and a sentence of 12 months' probation with 84 days in jail.

¶ 6          The State offered the following factual basis for defendant's plea. On March 18, 2023, defendant went to the residence of his former girlfriend, Jessica Miller, and her family. Miller and defendant had been separated for nearly two years and had little contact during that time. Defendant showed up at the residence uninvited and unannounced, causing emotional distress to Miller. Defendant then left the residence and went to the county jail, where he told officers Miller was upset and they should check on her. Officers spoke with Miller, who said she was emotionally distressed and did not want defendant at her home. Officers then told defendant not to return to Miller's home. After leaving the jail, defendant drove towards Miller's home. Police saw him in Miller's subdivision. Defendant was pulled over by the police about 200 feet from Miller's residence. If called, witnesses would testify Miller did not want defendant at the residence and did not consent to his conduct, in addition to identifying defendant and confirming all events took place in Menard County. The trial court accepted defendant's plea and sentenced him to 12 months' probation and 84 days in jail.

¶ 7          In accordance with the plea agreement, defendant's probation required he have no contact, either directly or indirectly, with Miller and her family members living at the residence. Among the named family members was Miller's brother, Nicholas Gibson.

¶ 8 In February 2024, the State filed a petition to revoke defendant's probation, alleging three violations of his probation terms. In April 2024 and July 2024, the State filed amended petitions to revoke defendant's probation, alleging additional violations of his probation terms. Paragraph 3(c) of the July amended petition asserted defendant violated his probation by having contact with Gibson at a gas station in Menard County. At an August 29, 2024, hearing, defendant admitted the allegation in paragraph 3(c) in exchange for dismissal of the other allegations.

¶ 9 The trial court heard the following factual basis for defendant's probation revocation. Defendant's probation was conditioned on, *inter alia*, having no contact with Gibson. On April 2, 2024, defendant entered the gas station where Gibson was working. Gibson was present at the time, and defendant acknowledged Gibson. Video evidence would show defendant stayed in the gas station for five minutes. Defendant went up to the counter where Gibson was working to get a drink and was checked out at the register by another employee. As defendant left the gas station, he slapped a window next to where Gibson was working. According to the State, Gibson and his coworkers would confirm these events if called to testify.

¶ 10 On October 3, 2024, the trial court held defendant's resentencing hearing. The court confirmed the previously filed presentence investigation report (PSI) was received by the court and the parties, inviting any additions or objections. The State offered four addenda to the PSI without objection from the defense. The State did not present other evidence. In mitigation, the defense called a single character witness, Joe Rupnik, to testify about defendant's positive employment history as a waiter and his efforts in maintaining his sobriety. Rupnik asked the court to consider probation, believing prison would negatively impact defendant's sobriety. On cross-examination, Rupnik testified defendant had been sober from alcohol for over four months.

¶ 11        The State requested a sentence of 30 to 36 months in prison. The State emphasized defendant (1) admitted to violating a probation condition by causing emotional distress to the victim when he visited her residence twice, (2) had an extensive criminal history, and (3) caused great stress to the victim's family.

¶ 12        The State argued several factors in aggravation, including his criminal history, the need for deterrence, and the fact defendant was on probation for another crime at the time of the offense. The State noted defendant was serving a term of "second chance" probation for a felony theft conviction when he committed the stalking offense in this case. The State emphasized probation had not worked and a prison sentence was appropriate.

¶ 13        Defense counsel requested a sentence of probation. In the alternative, counsel requested a sentence of not more than 12 to 18 months in prison. Defense counsel argued in mitigation defendant's conduct neither caused nor threatened serious physical harm to another and defendant did not contemplate his conduct would cause or threaten serious physical harm.

¶ 14        In allocution, defendant described his involvement in Miller's family life prior to their separation. Defendant stated he "never wished" to cause or premeditated "any irreparable harm" to the Millers on March 18, 2023, stating, he was "sorry for whatever irreparable harm, damage the family claims."

¶ 15        After the parties' arguments concluded, the trial court listed all the evidence presented and stated it considered (1) the factual bases for defendant's original guilty plea to count II and his probation violation, (2) the PSI, supplemental investigation, and four addenda from the State, (3) Rupnik's testimony, (4) defendant's "history, character, and attitude," and (5) his statement in allocution.

¶ 16        The trial court then weighed the factors in aggravation and mitigation. In

aggravation, the court found defendant (1) had a history of prior criminal activity and (2) was convicted of a felony committed while on probation for another felony. In mitigation, the court found defendant's conduct did not cause serious physical harm.

¶ 17        The trial court sentenced defendant to a 24-month prison term, followed by a 4-year term of MSR. The court explained, in light of defendant's probation violations, it could not conclude defendant was "a good candidate for probation" or "likely to successfully complete probation." The court reasoned probation was not appropriate after defendant had been "given breaks" by the courts on "numerous occasions." The court emphasized he (1) committed the stalking offense in Menard County while on probation for felony theft in Sangamon County and (2) violated his probation for the stalking offense, resulting in resentencing. Ultimately, the court found "a sentence of probation under these circumstances would deprecate the seriousness of the crimes committed and would be inconsistent with the ends of justice."

¶ 18        This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20        Defendant argues the trial court abused its discretion in resentencing him to 24 months' imprisonment because the sentence was based on his conduct while on probation and not the conduct leading to the original offense. According to defendant, "the evidence was such that a court properly exercising its discretion could have imposed a prison term at least slightly less than 24 months." Defendant concedes he did not raise this issue in the trial court but requests we nonetheless address it under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)).

¶ 21        The plain-error doctrine provides a narrow and limited exception to the general rule of procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 733 (2010). It permits a reviewing court to consider unpreserved error under the following two scenarios:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010).

¶ 22 The first step in a plain-error analysis is to determine whether any error occurred at all. *Id.* If there is no error, there can be no plain error, and our inquiry ends, with the procedural default remaining in place. See *People v. Brant*, 394 Ill. App. 3d 663, 677 (2009). If error did occur, then this court determines whether either of the plain error prongs are satisfied. *Id.* at 189-90. "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). If the defendant fails to meet this burden, then procedural default will apply. *Hillier*, 237 Ill. 2d at 545.

¶ 23 After revoking probation, a trial court may resentence a defendant to any sentence that would have been appropriate for the original offense. *People v. Young*, 138 Ill. App. 3d 130, 134-35 (1985); 730 ILCS 5/5-6-4(e) (West 2022). The court may consider the defendant's conduct while on probation as reflecting on the defendant's rehabilitative potential. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). When the defendant's conduct reflects poorly on his rehabilitative potential, the court may impose a more severe sentence than the one initially imposed. *Id.* However, the court may not punish the defendant for the conduct that gave rise to the probation violation. *Id.* Punishment is strictly for the original offense. *Id.* On appeal, we consider whether the trial court abused its discretion in resentencing the defendant. See *id.*

¶ 24 Stalking is a Class 4 felony with a sentencing range of one to three years'

imprisonment. 720 ILCS 5/12-7.3(a)(2), (b) (West 2022); 730 ILCS 5/5-4.5-45(a) (West 2022). Thus, defendant's two-year sentence was well within the statutory range and below the maximum possible prison term. We will not find a sentence within the statutory range to be an abuse of discretion unless "strongly persuaded" the trial court intended to penalize the defendant for the conduct constituting the probation violation. *Young*, 138 Ill. App. 3d at 142.

¶ 25    Defendant concedes in his brief the trial court, "at times, gave proper consideration to how [his] conduct on probation reflected on his rehabilitative potential." However, defendant asserts that, on multiple occasions, the trial court commingled defendant's probation violation with the underlying offense and the resulting sentence punished defendant for his conduct on probation. We disagree.

¶ 26    The trial court began its ruling by explaining it considered the factual basis for defendant's original plea of guilty to stalking. The court explained, "having also heard" the basis for the admission, it was "considering the factual basis for the violation of the terms of probation." The court was allowed to consider the factual basis for defendant's probation violation to determine defendant's rehabilitative potential. *Varghese*, 391 Ill. App. 3d at 876. Nothing suggests the court's comment made in sentencing commingled defendant's original offense and his conduct while on probation.

¶ 27    Defendant argues his original offense and conduct while on probation were also commingled when the trial court weighed factors in aggravation and mitigation. Before making findings on those factors, the court expressed "due regard for the circumstances of the offense and the violation of probation." However, the factors ultimately found by the court on the record were all related to the original offense. Thus, defendant's conduct after the original offense, including his probation violation, was not improperly weighed as an aggravating factor.

¶ 28    Additionally, defendant argues the trial court's comments reveal it treated his conduct on probation as an additional offense and punished him for "two separate charged offenses." Defendant contends the court's comments referring to "the *victims* in the case" and "the seriousness of the *crimes* committed" demonstrate defendant was punished for two offenses. (Emphases added.) These semantics do not constitute error when the record reveals defendant was sentenced for just one offense and the sentence was below the statutory maximum.

¶ 29    Finally, defendant maintains the trial court made " 'extensive' " comments about his conduct while on probation, showing he was punished for the probation violation. However, a review of the record shows the court's comments were clearly referring to the determination of whether defendant would comply with the terms of another period of probation. The court stated the following:

> "[W]hile you are on felony probation for stalking, ordered to have no contact of any kind with the brother of the victim, Nicholas Gibson, you in effect commit stalking again. It wasn't charged as stalking and you weren't convicted of stalking, but it's the same behavior.
>
> You sought out [Gibson] at a location that is close to the courthouse at his place of employment; and despite Court orders, you did that, you've admitted to doing that. *So you are not a good candidate for probation at this time* based on all those reasons." (Emphasis added.)

¶ 30    After reviewing the trial court's remarks at sentencing in their entirety, we conclude the court properly sentenced defendant for his stalking conviction and did not punish him for his probation violation. The record reflects the court considered the relevant factors and fashioned a sentence well within the statutory range. The court did not abuse its discretion in

sentencing defendant to 24 months' imprisonment.

¶ 31    Because we find no error occurred, we need not address defendant's plain-error argument. *People v. Rodriguez*, 2014 IL App (2d) 130148, ¶ 73 ("Where there is no error at all, there can be no plain error."). Accordingly, we honor defendant's forfeiture. See *Hillier*, 237 Ill. 2d at 545 ("If the defendant fails to meet his burden, the procedural default will be honored.").

¶ 32                              III. CONCLUSION

¶ 33    For the reasons stated, we affirm the trial court's judgment.

¶ 34    Affirmed.