NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 170915-U

NO. 4-17-0915

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | De Witt County |
| JESSE J. MYERS, | ) | No. 13CF48 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Richard Lee Broch Jr., |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding (1) the trial court lacked jurisdiction to hear defendant's posttrial ineffective-assistance-of-counsel claims and (2) defendant forfeited his excessive-sentence claim.

¶ 2    Defendant, Jesse J. Myers, was convicted of aggravated domestic battery and domestic battery and sentenced to 15 years' imprisonment. On appeal, he argues (1) the trial court failed to comply with *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), and (2) his sentence is excessive. We affirm.

¶ 3                          I. BACKGROUND

¶ 4                          A. The Charges

¶ 5    In October 2013, defendant was indicted on two counts of aggravated domestic battery (counts I and II) (720 ILCS 5/12-3.3(a-5) (West 2012)), a Class 2 felony with mandatory

Class X sentencing based on defendant's criminal history, and three counts of domestic battery (counts III-V) (720 ILCS 5/12-3.2(a)(1), (2) (West 2012)), a class A misdemeanor. The indictments alleged that on September 14, 2013, defendant committed the following acts against the victim—a family or household member: he (1) "impeded the normal breathing of [the victim] by blocking her nose and/or throat with a pillow" (counts I and II); (2) "caused bodily harm, a black eye, *** by punching her" (counts III and IV—the State dismissed count IV prior to trial); and (3) "made physical contact of an insulting or provoking nature *** by biting her chest" (count V).

¶ 6                                    B. Bench Trial

¶ 7          We limit our discussion of the evidence to that which is relevant to the issues on appeal.

¶ 8                                    1. *Brooke Wilson*

¶ 9          Brooke Wilson testified that at the time of the alleged offense, she had been in a relationship with defendant for several months and they were living together. On the night of September 13, 2013, Wilson and defendant "met up with neighbors, had drinks at the apartment, [and] went out to the bar with some of these neighbors ***." Wilson testified that defendant and the others went inside of the bar while she stayed outside to talk with the bouncer, who was "an ex-boyfriend of mine." Once the bar closed, a local police officer gave Wilson and defendant—who were too intoxicated to drive—a ride to their apartment.

¶ 10          Upon returning to the apartment, Wilson testified defendant "started yelling and screaming that he thought I was cheating on him, accused me of cheating on him with a guy," and then he pushed her to the ground. Wilson described the ensuing physical altercation in the following colloquy:

- 2 -

"Q. When he was yelling those things at you, and you're going into the bedroom—now, what happened after he got you down?

A. Straddled me with one knee on each side of my waist, ended up with my arms above my head, held one hand on my wrist. I started receiving blows to my face, to my head, my sides, and whenever he wasn't punching me, I was getting bit on several different parts of my body. He grabbed a pillow off my bed, stuck it over my face with each side of the pillow hitting the ground to where I had no way of breathing whatsoever. Whenever the pillow was being taken from my face, I would get blows again and again, repeated events over and over and over again. I was clawing; I was kicking; I was trying everything I could do to get off of the floor to get from underneath the pillow.

Q. What's going through your mind at this time?

A. I was scared to death. I couldn't breathe. I started blacking out. I thought I was going to die."

¶ 11                                    2. *Verdict*

¶ 12        The trial court found defendant guilty on counts I, III, and V. The court stated it was "not going to find guilt as to Count II of the information charging the exact same offense [as count I]."

¶ 13                                    C. Sentencing

¶ 14        On January 24, 2014, the trial court conducted the sentencing hearing. A presentence investigative report (PSI) was prepared for the hearing. The PSI indicated that in addition to the two felony convictions that served as the basis for his Class X sentencing, defendant had been convicted of four misdemeanors as an adult. He was sentenced to probation

three times and was successfully discharged only once. The State introduced the victim's impact statement, in which she stated that she had suffered a "severe concussion" and developed "a slight stutter" as a result of the attack. Defendant presented the testimony of several character witnesses as evidence in mitigation.

¶ 15     The trial court sentenced defendant to concurrent terms of 15 years' imprisonment on count I and 364 days in jail on counts III and V. In doing so, the court found no mitigating factors applied while three aggravating factors did: (1) defendant's "actions caused, or threatened, serious harm"; (2) defendant's "prior criminal history"; and (3) the "necessity for a deterrence in this case."

¶ 16                          D. Postsentencing Proceedings

¶ 17     On February 11, 2014, defendant *pro se* filed a document that was captioned: "Notice of Appeal." In it, defendant stated, "I *** am filing this notice asking the courts to appeal the conviction and sentence of case [No.] 13CF48 (Aggravated Domestic Battery). The reasons I am asking for an appeal are as follows." The "reasons" for defendant's "Notice of Appeal" consisted of multiple complaints about trial counsel's performance.

¶ 18     A docket entry, entered on February 13, 2014, reads: "Court reviews [defendant's] *pro se* Notice of Appeal. On Court's own [motion], cause set for *Krankel* hearing ***." The court conducted a *Krankel* hearing the following month. There is no transcript of the proceeding, but the relevant docket entry states, in part:

> "Cause called for *Krankel* hearing on [defendant's] *pro se* post-
> trial [motion] filed in this cause claiming among other things
> ineffective assistance of counsel. Pursuant to case law, the Court is

- 4 -

going to appoint [attorney] Kevin Hammer to [represent defendant]

for 2nd stage of non-evidentiary hearing in this cause."

The next day, defense counsel withdrew his representation, and appointed counsel entered his appearance. After requesting certain transcripts of proceedings, appointed counsel made the following statement to the court: "Judge, in this case I was appointed by the Court. [Defendant] has filed some motions. They may be post-conviction. I'm not sure exactly the nature [of the motions]."

¶ 19 In June 2014, the trial court conducted what it termed a "2nd stage *** non-evidentiary hearing" on defendant's "Notice of Appeal." The court characterized the proceeding as a "second stage hearing on Defendant's post trial motion seeking relief due to ineffective assistance of counsel." The court asked the State if it was "objecting to the Defendant's motion and claim[,]" and then asked appointed counsel whether he had "any argument as to why this matter should proceed onto a third stage evidentiary proceeding[.]" After listening to the arguments of the parties, the trial court dismissed "[d]efendant's post trial motion."

¶ 20 In March 2017, defendant filed a "petition for leave to file a late postconviction [petition.]" The trial court granted defendant's request, and, in September 2017, defendant filed a postconviction petition. In it, he alleged that his right to appeal had been denied because he filed a timely notice of appeal on February 11, 2014, which, he noted, was "actually headed 'Notice of Appeal,' " but the trial court "improperly mistook the motion for something other than what it was labeled." The court appointed postconviction counsel, and, at a status hearing on defendant's postconviction petition, counsel requested that defendant's *pro se* "Notice of Appeal" filed on February 11, 2014, "be considered a Notice of Appeal and that the appellate process start in the normal, normal sense of what it would otherwise be even though we're now several years later in

that regard." The State did not object to counsel's request, and the trial court ordered a late notice of appeal be filed on defendant's behalf.

¶ 21    This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, defendant argues (1) the trial court failed to comply with the requirements of *Krankel* and (2) his sentence is excessive.

¶ 24                        A. The Trial Court Lacked
                    Jurisdiction to Conduct a *Krankel* Inquiry

¶ 25    Defendant argues the trial court failed to comply with the requirements of *Krankel*. Specifically, defendant asserts the court conducted a proceeding that was more akin to a second-stage dismissal hearing under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)), than the type of hearing required by *Krankel*.

¶ 26    Initially, we note the State contends it would be improper to reach the merits of defendant's argument because the trial court did not possess jurisdiction to consider his posttrial claims, as those claims were contained within his notice of appeal, and the filing of the notice of appeal divested the court of jurisdiction. In reply, defendant argues in the alternative either that (1) the relevant document was not a notice of appeal, despite its caption and substance or (2) if it was a notice of appeal, the trial court properly recharacterized it as a *Krankel* motion, thereby retaining jurisdiction. We review jurisdictional questions, which are question of law, *de novo*. See, *e.g.*, *People v. Richards*, 394 Ill. App. 3d 706, 708, 916 N.E.2d 66, 68 (2009).

¶ 27    The supreme court, in *Krankel* and its progeny, developed a procedure intended "to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal." *People v. Patrick*, 2011 IL 111666, ¶ 41, 960 N.E.2d 1114. This procedure— triggered by a defendant bringing a *pro se* posttrial claim of ineffective assistance to the court's

attention—consists of two steps. *People v. Moore*, 207 Ill. 2d 68, 79, 797 N.E.2d 631, 638 (2003). First, the trial court must "conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *Id.* Then, "if the allegations show possible neglect of the case, new counsel should be appointed." *Id.* at 78. "The new counsel would then represent the defendant at [a] hearing on the defendant's *pro se* claim of ineffective assistance." *Id.*

¶ 28　　　　Because the *Krankel* procedure is a common law procedure, a trial court's ability to inquire into posttrial ineffective-assistance claims is not constrained by certain statutory requirements, such as the 30-day filing deadline for a motion for a new trial. See *Patrick*, 2011 IL 111666, ¶ 30 ("[T]he State's attempt to graft the statutory requirement in section 116-1(b) [of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1(b) (West 2006))] onto a common law remedy is fundamentally flawed."). However, the supreme court has made it clear that a trial court does not retain jurisdiction to entertain posttrial ineffective-assistance claims indefinitely, noting "that once a notice of appeal has been filed, the trial court loses jurisdiction of the case and may not entertain a *Krankel* motion ***." *Id.* ¶ 39; see also *People v. Bounds*, 182 Ill. 2d 1, 3, 694 N.E.2d 560, 561 (1998) ("When the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court.").

¶ 29　　　　In *People v. Darr*, 2018 IL App (3d) 150562, 95 N.E.3d 10, the issue was whether a trial court retained jurisdiction to conduct a preliminary *Krankel* inquiry where its duty to do so was triggered contemporaneously with the filing of a notice of appeal. There, the "defendant did not raise his ineffectiveness claims before the notice of appeal was filed. In fact, he filed the two contemporaneously, apparently as a single filing." *Id.* ¶ 93. The trial court did not inquire into the defendant's claims, concluding that the notice of appeal divested it of jurisdiction. *Id.* ¶ 41. On

appeal, the defendant argued that the court had erred by not conducting a preliminary *Krankel* inquiry. *Id.* ¶ 87. The *Darr* court disagreed, holding instead that "[w]hen [the] defendant filed his notice of appeal, *even contemporaneously with his ineffectiveness claims*, he had perfected his appeal and deprived the circuit court of jurisdiction." (Emphasis added.) *Id.* ¶ 99. The *Darr* court added that "[o]nce the notice of appeal was filed, the circuit court lost jurisdiction; had it conducted any sort of *Krankel* inquiry at that point, any resulting ruling would be void." *Id.* ¶ 93 (citing *People v. Flowers*, 208 Ill. 2d 291, 306, 802 N.E.2d 1174, 1183 (2003)).

¶ 30    Here, defendant filed, within 30 days of being sentenced, a single document, captioned: "Notice of Appeal." In the document, defendant stated, "I *** am filing this notice asking the courts to appeal the conviction and sentence of case [No.] 13CF48 (Aggravated Domestic Battery). The reasons I am asking for an appeal are as follows." The "reasons" consisted of multiple complaints about trial counsel's performance. A docket entry, entered two days after defendant filed this document, reads: "Court reviews Deft's *pro se* Notice of Appeal. On Court's own mtn, cause set for *Krankel* hearing ***."

¶ 31    Despite the document's caption and substance, defendant appears to argue that his filing on February 11, 2014, was not a notice of appeal. He makes the conclusory assertion that "everyone's understanding at the time" was "that the document was not a notice of appeal, but a filing that triggered a *Krankel* inquiry ***." Defendant's assertion is not supported by the record. First, the court's docket entry states that it "review[ed] [defendant's] *pro se* Notice of Appeal"; it therefore appears that the court understood the document to be a notice of appeal but, nonetheless, scheduled a *Krankel* hearing because the filing also raised posttrial claims of ineffective assistance. In addition, appointed counsel stated to the court shortly after his appointment, "[defendant] has filed some motions. They may be post-conviction. I'm not sure

exactly the nature [of the motions]." Finally, and importantly, defendant noted in his postconviction petition—alleging he was denied his right to appeal—that the February 11, 2014, filing was "actually headed 'Notice of Appeal,' " but the court "*improperly mistook the motion for something other than what it was labeled*." (Emphasis added.) Thus, defendant previously argued in the trial court that the document was in fact a notice of appeal. Now, however, he contends "that the document was not a notice of appeal ***." We reject defendant's attempt to change his argument on appeal and now characterize the relevant document as something other than a notice of appeal. As explained in *Darr*, defendant, by raising his ineffective-assistance-of-counsel claims in the notice of appeal, triggered *Krankel* at the exact moment—and not before—he perfected his appeal, which consequently divested the trial court of jurisdiction to hear his posttrial claims.

¶ 32       Defendant appears to argue in the alternative that even if he did raise his claims in a notice of appeal, the trial court was empowered to recharacterize it as a *Krankel* motion because doing so would have properly furthered *Krankel*'s purpose of limiting issues on appeal. Defendant cites no authority in support of this proposition, and, while we agree that the trial court's actions were consistent with an intent to further *Krankel*'s purpose, trial courts do not have the ability to circumvent jurisdictional limitations following the filing of a notice of appeal. See, *e.g.*, *Keller v. Walker*, 319 Ill. App. 3d 67, 70, 744 N.E.2d 381, 383 (2001) ("[S]ubject matter jurisdiction cannot be waived, conferred by stipulation, or consented to by the parties."). Accordingly, because defendant failed to raise his posttrial claims of ineffective assistance prior to filing a notice of appeal—raising them instead contemporaneously with his notice of appeal—we conclude the trial court lacked jurisdiction to entertain them. See *Patrick*, 2011 IL 111666, ¶ 39 ("We note that once a notice of appeal has been filed, the trial court loses jurisdiction of the

case and may not entertain a *Krankel* motion raising a *pro se* claim of ineffective assistance of counsel."); *Darr*, 2018 IL App (3d) 150562, ¶ 99 ("When defendant filed his notice of appeal, even contemporaneously with his ineffectiveness claims, he had perfected his appeal and deprived the circuit court of jurisdiction.").

¶ 33                                B. Defendant Forfeited
His Excessive-Sentence Claim

¶ 34        Next, defendant contends his sentence is excessive because it was doubly enhanced by the court's improper reliance on a factor inherent in the offense. Defendant forfeited this argument by failing to object at the sentencing hearing and raise the argument in a motion to reconsider his sentence, but he asks us to review it under the second prong of the plain-error doctrine because the court's alleged error "impinged upon [his] fundamental right to liberty."

¶ 35        "The plain-error doctrine is a narrow and limited exception." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). It allows us to consider a forfeited claim when a defendant demonstrates, in the sentencing context, both that (1) "a clear or obvious error occurred" and, in relevant part, (2) "the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* The defendant carries the burden of persuasion under both prongs of the plain-error doctrine. *Id.* "If the defendant fails to meet his burden, the procedural default will be honored." *Id.* "The ultimate question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*." *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010).

¶ 36        Here, even assuming, *arguendo*, defendant can establish that the trial court committed clear or obvious error by relying on an improper aggravating factor—which, as briefly discussed below, we believe he cannot—we still would not excuse his forfeiture, as he is unable to demonstrate that the error "was so egregious as to deny [him] a fair sentencing

- 10 -

hearing." *Hillier*, 237 Ill. 2d at 545. Defendant's lone effort to meet his burden consists of a single sentence in his brief: "The trial judge's express reliance on this improper factor impinged upon [defendant's] fundamental right to liberty, making this Court's review appropriate under the second prong of plain error."

¶ 37 This court has consistently declined to apply plain-error review to sentencing errors involving a misapplication of law simply because a defendant alleges that "the right to be sentenced lawfully is substantial in that it affects a defendant's fundamental right to liberty." *People v. Rathbone*, 345 Ill. App. 3d 305, 310, 802 N.E.2d 333, 338 (2003); see also, *e.g.*, *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010) (declining to review for plain error the claim that the trial court considered multiple improper factors in aggravation). To do otherwise, we have reasoned, would be to essentially allow the plain-error doctrine to swallow the rule of forfeiture. See *Rathbone*, 345 Ill. App. 3d at 311 ("If *all* matters related to a 'misapplication of law' at sentencing affect a defendant's fundamental right to liberty and are thus reviewable as plain error, then the plain-error exception essentially swallows the forfeiture rule ***.") (Emphasis in original.). Accordingly, we find defendant has failed to meet his burden of demonstrating—merely by stating the court's "reliance on [an] improper factor impinged upon [his] fundamental right to liberty"—that the court's error "was so egregious as to deny [him] a fair sentencing hearing[,]" and, as a result, we honor his forfeiture. *Hillier*, 237 Ill. 2d at 545.

¶ 38 In closing, we note that defendant alternatively argues that both trial counsel and appointed counsel rendered ineffective assistance by failing to file a motion to reconsider his sentence on the ground that the court improperly relied on a factor—causing or threatening serious harm—inherent in the offense of aggravated domestic battery based on strangulation. We find this argument meritless, as a trial court is not prohibited from considering the harm caused

or threatened, even when it is inherent in the charged offense, if the *degree* of harm caused by a defendant was greater than the minimum amount necessary to commit the offense. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 67, 129 N.E.3d 755 (when considering whether to find "serious harm" an aggravating factor, "the sentencing court compares the conduct in the case before it against the minimum conduct necessary to commit the offense").

¶ 39       Here, the harmful action inherent in the relevant offense was strangulation. 720 ILCS 5/12-3.3(a-5) (West 2012) ("A person who, in committing a domestic battery, strangles another individual commits aggravated domestic battery."). "Strangle," in this context, "means intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual." *Id.* Defendant did more than merely block the victim's nose or mouth. The victim testified that in addition to smothering her face with a pillow "over and over again," defendant also repeatedly punched her in the side and face "[w]henever the pillow was being taken from [her] face ***." The victim further stated that as a result of the attack, she suffered a "severe concussion" and developed a stutter. Here, not only did defendant cause harm that was greater than what was inherent in the offense, he caused separate, serious physical harm as a result of his beating the victim. Thus, it was not improper for the court to consider that defendant's conduct caused or threatened serious harm as a factor in aggravation, and a motion challenging defendant's sentence on this basis would have been unsuccessful.

¶ 40                                   III. CONCLUSION

¶ 41       For the reasons stated, we affirm the trial court's judgment.

¶ 42       Affirmed.